**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Petitioner**

v.

**Daniel GILBERT and The Wall Street Journal, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 13, 2012.
Decided March 27, 2012.

Elizabeth Lion Januzzi, Assistant Counsel, Harrisburg, for petitioner.

David P. Zambito, Harrisburg, for amicus curiae Energy Association of Pennsylvania.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The Pennsylvania Public Utility Commission (PUC) petitions for review of an order of the Office of Open Records (OOR) dated June 27, 2011, which determined that the records requested from the PUC by Daniel Gilbert, a reporter for The Wall Street Journal (Gilbert), are "public records," pursuant to the Right–to–Know Law (Law),[1] and directed the PUC to make these records available. We reverse.

On March 31, 2011, the PUC received a written request from Gilbert pursuant to the Law, seeking access to records related to underground natural gas pipelines. Gilbert requested:

[E]lectronic copies of the following records, limited to underground natural-gas pipelines, beginning Jan. 1, 2000 and continuing through the present:

1.) All records related to probable violations identified by the [PUC] including but not limited to:

a.) A description of the probable violation, including applicable Pennsylvania Code sections, when and where it was identified, the company or individual faulted;

b.) All enforcement actions taken by the [PUC], including financial penalties, whether the actions were appealed, and the resolution of the actions;

c.) All associated descriptions and narratives concerning probable violations;

d.) A list of all types of records related to pipeline safety that operators are required to keep and that the [PUC] inspects.

2.) All records related to pipeline incidents reported to the [PUC] by pipe-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

line operators, including but not limited to:

 a.) The name of the pipeline operator, date and location of incident;

 b.) Whether there was an explosion;

 c.) The number of fatalities and injuries, if any;

 d.) The property damage in dollars, if any;

 e.) The cause of the incident as determined by the [PUC], and any description and narrative;

 f.) If caused by a third party excavator, the name of the excavator, whether individual or firm;

 g.) Pipe specifications associated with the incident, as applicable: diameter, manufacturer, year of manufacture, material and type (i.e. cast iron, polyvinyl chloride, etc.), type of seam, type of weld, thickness of pipe wall;

 h.) Pressure at the point and time of the incident, normal operating pressure at the point and time of the incident, maximum allowable operating pressure at point and time of the incident;

 i.) Corrosion, as applicable, what type (i.e. pitting, general corrosion).

3.) Copies of communications from pipeline owners and operators regarding public awareness programs, including communications that advise state officials of pipeline locations, and any other communications received by the [PUC] as required by the Pipeline Safety Improvement Act of 2002.

4.) Copies of all requests under the RTKL received by the [PUC] between Jan. 1, 2011 and the present.

(Gilbert's Request, 3/31/11, at 1–2; R.R. at 1a–2a.)

On May 9, 2011, the PUC granted Gilbert's request for access to item 4 but denied the request in all other respects. The PUC denied access to items 1(a), 1(c), 1(d), 2(a), 2(b), 2(d), 2(e), 2(g)-(i) and 3, citing exemptions for noncriminal investigative records under section 708(b)(17) of the Law, 65 P.S. § 67.708(b)(17), and internal, pre-decisional deliberations under section 708(b)(10)(i)(A) of the Law, 65 P.S. § 67.708(b)(10)(i)(A). The PUC denied access to items 1(b), 2(c) and 2(f), on other grounds, which were not challenged in this appeal.

On May 27, 2011, Gilbert and The Wall Street Journal (collectively, Respondents) appealed the PUC's determination to the OOR, challenging only the PUC's claims of exemptions for gas safety records related to noncriminal investigations conducted by the PUC and records that reflected internal, pre-decisional deliberations of the PUC, because the requested records were not "public records" under the Law. The OOR invited both parties to supplement the record. On June 9, 2011, the PUC provided a position statement, along with a variety of exhibits. The PUC advised that it has provided access to all of the records requested in item 1(d) and part of the records in item 3 relating to "public awareness materials," thereby rendering these requests moot.[2] The PUC requested a hearing "[i]n the event the Appeals Officer determines that the [PUC]'s burden of proof in this matter is not satisfied...." (PUC Letter to OOR, 6/9/11, at 6; R.R. at 18a.)

On June 10, 2011, Respondents provided a position statement, along with an exhibit containing "aggregated figures regarding compliance actions taken, penalties assessed, and penalty funds collected by the

---

2. The OOR did not make any decisions regarding the mootness of item 3.

PUC." [3] (OOR decision, 6/27/11, at 4; R.R. at 73a.) On June 21, 2011, the OOR denied the PUC's request for a hearing.

The OOR determined that the PUC did not establish that the requested records were protected by the noncriminal investigation exemption or by the internal, predecisional deliberations exemption. Ultimately, the OOR determined that item 1(d) of the request is moot, as the PUC satisfied this request by directing Respondents to an attachment that Respondents already possessed. On June 27, 2011, the OOR granted Respondents' appeal and directed the PUC to provide all responsive records to the requested items of issue within thirty days.

The PUC now petitions this court for review.[4] The PUC's challenge is limited to items 1(a), 1(c), 2(a), 2(b), 2(d), 2(e), 2(g)-(i), and 3 of Respondents' request.

 Initially, the PUC contends that the OOR erred in holding that the requested gas safety investigation records are exempt under the Law as agency records relating to a noncriminal investigation.[5] Under the Law, Commonwealth agencies are required to "provide public records" to requesters "in accordance with [the Law]."

Section 301(a) of the Law, 65 P.S. § 67.301(a).

The term "record" is defined as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." Section 102 of the Law, 65 P.S. § 67.102. Moreover, the term "record" includes "a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document." *Id.* Records possessed by Commonwealth agencies are presumed to be public records, but this "presumption shall not apply if: (1) the record is exempt under section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law, regulation or judicial order or decree." Section 305(a) of the Law, 65 P.S. § 67.305(a). "The burden of proving that a record of a Commonwealth agency ... is exempt from public access shall be on the Commonwealth agency ... receiving a request by a preponderance of

---

3. After the record closed, the PUC provided an additional position statement and an affidavit that were not considered.

4. The PUC filed a brief before this court; however, Respondents, having failed to timely file a brief, were precluded from doing so. The Energy Association of Pennsylvania (EAP), a trade association whose members include the natural gas and electric public utilities operating in this Commonwealth, has filed an amicus brief in support of the PUC's position that the records are exempt. EAP is an advocate for its members on policy issues before the General Assembly, the PUC, and various other state governmental agencies, and its members deliver energy to more than 8.3 million residential, commercial, and industrial customers within the Commonwealth.

5. Our scope of review under the Law is plenary. *Stein v. Plymouth Township,* 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth.2010). Our standard of review under the Law is an independent review of the OOR's orders and we may substitute our own findings of fact for that of the agency. *Bowling v. Office of Open Records,* 990 A.2d 813, 818 (Pa.Cmwlth.2010) (*en banc* ), *appeal granted,* 609 Pa. 265, 15 A.3d 427 (2011). A court reviewing an appeal from an OOR hearing officer is entitled to the broadest scope of review, a review of the entire record on appeal along with other material, such as a stipulation of the parties, or an in camera review of the documents at issue, and we may further supplement the record through hearing or remand. *Id.* at 820.

the evidence." Section 708(a)(1) of the Law, 65 P.S. § 67.708(a)(1).

Specifically, the PUC contends that the requested records are exempt pursuant to section 708(b)(17) of the Law, 65 P.S. § 67.708(b)(17)(emphasis added), which exempts from public disclosure in pertinent part:

A record of an agency relating to a noncriminal investigation, including:

(i) Complaints submitted to an agency.

(ii) *Investigative materials, notes, correspondence and reports.*

. . .

(iv) A record that includes information made confidential by law.

. . .

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of an agency investigation, *except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement* unless the agreement is determined to be confidential by a court.

. . .

(D) Hinder an agency's ability to secure an administrative or civil sanction.

The terms "noncriminal" and "investigation" are not defined by the Law. This court has interpreted the term "noncriminal" to signal the exemption of investigations other than those that are criminal in nature. *Department of Health v. Office of Open Records,* 4 A.3d 803, 810 (Pa. Cmwlth.2010). Further, we have concluded that the term "investigation" in section 708(b)(17) means "a systematic or searching inquiry, a detailed examination, or an official probe." *Id.* at 811.

Here, the investigations performed by the PUC are done as part of the requirement for eligibility for funding from the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA).[6] In order to qualify for funding, PHMSA requires an annual certification by the PUC. To facilitate the certification process, the PUC created its Bureau of Investigation & Enforcement (I & E) and hired gas safety inspectors whose sole duty is to conduct inspections/investigations of gas utilities for compliance with applicable state and federal gas safety regulations. (Affidavit of Paul Metro, at 3; R.R. at 32a.) The gas

---

**6.** The Pipeline Safety Act was created through Chapter 601 of Title 49 of the United States Code, 49 U.S.C. §§ 60101–60137. The purpose of the Act is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102(a)(1). "The Secretary shall prescribe minimum safety standards for pipeline transportation and for pipeline facilities" and "ensure that employees who operate and maintain the facility are qualified to operate and maintain the pipeline facilities." 49 U.S.C. § 60102(a)(2) & (3). The Secretary of Transportation created PHMSA, which is responsible for "[a]dminis-

tering a national program of safety in natural gas ... pipeline transportation including identifying pipeline safety concerns, developing uniform safety standards, and promulgating and enforcing safety regulations." 49 C.F.R. § 1.4(h)(1). The federal government may authorize a state to act as its agent to inspect interstate pipelines, but retains responsibility for enforcement of the regulations. 49 U.S.C § 60117(c). The Pipeline Safety Act authorizes federal grants to aid states with the cost of the personnel, equipment, and activities reasonably required to undertake pipeline regulatory, inspection, and enforcement responsibilities. 49 U.S.C. § 60107.

safety inspectors' inspections/investigations involve the investigation of the gas utility's entire operation, the plant, the infrastructure, the records and employees. (*Id.* at 3–4; R.R. at 32a–33a.) The purpose of these inspections/investigations is to assess whether the gas utility is providing the quality of service mandated by law. (*Id.*) The gas safety inspections involve systematic, searching, detailed examinations of a natural gas utility's operations and whether such operations were in compliance with the applicable federal and state pipeline safety regulations.

In *Department of Health,* the department petitioned this court for review of a final determination of the OOR that concluded that the documents that related to government-mandated inspections and surveys conducted by the department on a nursing home were not exempt from public disclosure under the noncriminal investigation exemption set forth in section 708(b)(17) of the Law. 4 A.3d at 804. The department conducts these inspections in order to enforce licensing requirements and applicable state and federal laws and regulations. *Id.* at 805. The department is also responsible for conducting surveys to monitor compliance with Medicare and medical assistance certification requests. *Id.* This court reversed the OOR and determined that materials generated during detailed surveys and inspections to ensure compliance with federal and state laws or regulations were noncriminal investigative records that are exempt from public disclo-

sure pursuant to section 708(b)(17) of the Law. *Id.* at 815–16.

As in *Department of Health,* the I & E is conducting the inspections/investigations to determine if the utilities are in compliance with the Public Utility Code, 66 Pa. C.S. §§ 101–3316,[7] the PHMSA and other applicable state and federal regulations. The Public Utility Code, 66 Pa.C.S. § 335(d) (emphasis added), provides in pertinent part:

> In addition to any other requirements imposed by law, including ... the [Law] ..., whenever the [PUC] conducts an investigation of an act or practice of a public utility and *makes a decision, enters into a settlement with a public utility or takes any other official action ...* with respect to its investigation, it shall make part of the public record and release publicly any documents relied upon by the [PUC] in reaching its determination. ...

It is not until after the PUC's investigative materials are presented as part of a formal complaint, presented at a formal hearing, or presented as part of a settlement agreement that the materials are made public.

To the extent that the OOR argues that the PUC failed to present sufficient factual evidence before it, "such an argument is problematic given that the OOR did not hold a hearing in this matter." *Department of Health,* 4 A.3d at 814 n. 12. The record reflects that the PUC cited to the same statutes and regulations before the OOR that it relies upon before this court. Moreover, whether the requested records

---

**7.** Section 1508 of the Public Utility Code, 66 Pa.C.S. § 1508 (emphasis added), provides that:

> Every public utility shall give immediate notice to the [PUC] of the happening of any accident in or about, or in connection with, the operation of its service and facilities, wherein any person shall have been killed or injured, and furnish such full and de-

tailed report of such accident, within such time and in such manner as the [PUC] shall require. *Such report shall not be open for public inspection,* except by order of the [PUC], and shall not be admitted in evidence for any purpose in any suit or action for damages growing out of any matter or thing mentioned in such report.

are covered by section 708(b)(17) of the Law can be determined by comparing the language of the request itself with the language of section 708(b)(17). "If the OOR desired further elaboration from the [PUC] on those statutes and regulations prior to making its decision, it could have held a hearing." *Id.*

In its request, Respondents asked for all records related to probable violations, pipeline incidents reported by a pipeline operator, and "[c]opies of communications from pipeline owners and operators regarding public awareness programs,[8] including communications that advise state officials of pipeline locations, and any other communications received by the [PUC] as required by the Pipeline Safety Improvement Act of 2002." (Gilbert's Request, 3/31/11, at 2; R.R. at 2a.) This request is quite broad and includes the investigative materials, notes, correspondences and reports gathered by the I & E gas safety inspectors. Allowing access to these investigative materials that may contain unsubstantiated statements or allegations about an owner, employee or utility, would be problematic, because the owner, employee or utility would not be provided the opportunity to respond to the materials. *See Department of Health,* 4 A.3d at 812 (documents will not be disclosed that contain unsubstantiated statements or allegations about a nursing home or individual because the nursing home or individual would not have an opportunity to respond).

Further, strong public policy considerations support interpreting section 708(b)(17) as being applicable to these particular inspections/investigations conducted by the PUC's I & E gas safety inspectors. Requiring the PUC to disclose the gas safety inspectors' notes, employee statements, and other materials related to the inspections/investigations could lead to owners and employees being less likely to cooperate and provide relevant information out of fear of retaliation or public embarrassment. If individuals are less likely to cooperate in the inspections/investigations process, then the inspections/investigations will no longer be an effective means of monitoring the utilities compliance with statutory and regulatory requirements. *See Department of Health,* 4 A.3d at 811–12 (strong public policy considerations support interpreting section 708(b)(17) as being applicable to the department's inspections and surveys).

The OOR determined that pursuant to *Department of Transportation v. Office of Open Records,* 7 A.3d 329 (Pa.Cmwlth. 2010), the requested records were not exempt as noncriminal investigations because the PUC failed to link specific requested records to any investigatory activity. However, in *Department of Transportation,* this court addressed whether the evidentiary privilege in section 3754 of the Vehicle Code, 75 Pa.C.S. § 3754, exempts from disclosure the sight distance measurements and traffic studies conducted by the Department of Transportation (DOT) pursuant to section 305(a)(2) of the Law, 65 P.S. § 67.305(a)(2). 7 A.3d at 335. The issue of whether these studies were exempt pursuant to section 708(b)(17) of the Law as noncriminal investigative records was waived in that case, and, therefore, was not addressed by this court in that opinion. *Id.* at 336. Thus, *Department of Transportation* is distinguishable and does not apply to the instant case.

---

8. The record reflects that the PUC offered to provide Respondents with copies of the records related to the "public awareness programs" submitted by gas utilities, for which no confidentiality had been requested by the utilities. (R.R. at 41a.) The record further reflects that Respondents declined the offer. (*Id.*)

Additionally, the enumerated exceptions set forth in section 708(b)(17)(vi) that are subject to public disclosure, i.e., records that impose fines/penalties, modify prior authorizations, or are settlement agreements, do not apply to the requested records. The requested records are generated by the PUC's I & E gas safety inspectors during inspections and ensuing determinations on whether to prosecute. The gas safety inspectors are without authority to assess fines/penalties, modify a prior authorization, or execute a settlement agreement to resolve formal complaints or prosecutions for violations of federal and state natural gas safety regulations. Any formal action or determination by the PUC to impose civil fines/penalties or to enter into settlements of formal complaints/prosecutions of gas safety activities can only be undertaken by the PUC after a majority vote at an open public meeting and effective upon entry of a PUC order. (R.R. at 58a.)

We, therefore, conclude that the inspections/investigations conducted by the PUC in this matter constitute a "noncriminal investigation" for purposes of Section 708(b)(17) of the Law.[9] As such, items 1(a), 1(c), 2(a), 2(b), 2(d), 2(e), 2(g)-(i), and 3 of Respondents' request, in their entirety, are not subject to public disclosure.

Accordingly, we reverse the OOR's final determination as it relates to items 1(a), 1(c), 2(a), 2(b), 2(d), 2(e), 2(g)-(i), and 3 of Respondents' request.

## ORDER

AND NOW, this 27th day of March, 2012, the order dated June 27, 2011, of the Office of Open Records in the above-captioned matter is hereby reversed as it relates to items 1(a), 1(c), 2(a), 2(b), 2(d), 2(e), 2(g)-(i), and 3 of Daniel Gilbert and The Wall Street Journal's Right–to–Know Law request.

---

9. The PUC also contends that the requested records are exempt pursuant to section 708(b)(10)(i)(A) of the Law, 65 P.S. § 67.708(b)(10)(i)(A), as records that reflect the internal, pre-decisional deliberations of or between agencies, their members, employees or officials, and any research, memos, or other documents used in the pre-decisional deliberations. Given our disposition of the first issue, we need not reach the issue of whether the requested documents would also be exempt under the internal, pre-decisional deliberative records exemption set forth in section 708(b)(10)(i)(A) of the Law.