PENNSYLVANIA PUBLIC UTILITY COMMISSION, Petitioner

v.

Andrew SEDER/The Times Leader, Respondent.

Pennsylvania Public Utility Commission, Petitioner

v.

Scott Kraus/The Morning Call, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 2014.

Decided Dec. 3, 2014.

---

Steven K. Bainbridge, Assistant Counsel, Harrisburg, for petitioner.

David B. MacGregor, Philadelphia, for intervenor PPL Electric Utilities Corporation.

Craig J. Staudenmaier, Harrisburg, for respondents.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge and P. KEVIN BROBSON, Judge and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

The Pennsylvania Utility Commission (PUC) and intervenor, PPL Electric Utilities Corp. (PPL) (collectively Petitioners), petition for review of two final determinations of the Office of Open Records (OOR) entered November 4, 2013, at Docket No. AP 2013–1858 and November 20, 2013, at Docket No. AP 2013–1986. Pursuant to Section 335(d) of the Public Utility Code, 66 Pa.C.S. § 335(d), these orders granted public access to documents related to an informal investigation of PPL conducted by PUC's Bureau of Investigation & Enforcement (I & E). We reverse.

On October 29, 2011, a snowstorm resulted in power interruptions for approximately 388,318 customers, primarily due to the accumulation of heavy, wet snow on tree foliage. PPL records show that a total of 176,652 customers were without service for more than 12 hours, a total of 131,493 customers were without service for

24 hours or longer, and service was fully restored 12:00 p.m. on November 5, 2011. Due to the number of outages, PPL was required to prioritize the order in which service would be restored. Storm utility crews were assigned to restore power to the highest priority areas first, and then reassigned to the next highest priority area.

On November 8, 2011, the PUC's Bureau of Consumer Services (BCS) received an anonymous letter (Tip Letter) from a person representing him/herself as an employee of PPL. The Tip Letter alleged that a restoration crew was transferred from a higher priority job to first restore service to a lower priority job. Based on the allegations in the Tip Letter, I & E initiated an informal investigation to determine whether PPL violated PUC regulations, the Public Utility Code, 66 Pa.C.S. §§ 101–3316, and/or other applicable statutes.

On March 29, 2013, I & E and PPL filed a settlement agreement, together with the parties' respective statements in support of the settlement, for approval by the Commissioners of the PUC. The settlement was reached without a formal complaint, hearing, or evidentiary record, and without any findings of fact or conclusions of law. The settlement agreement provided that PPL would pay a $60,000 civil penalty, but did not disclose the details regarding the Tip Letter nor most of the investigative information. At a public meeting on August 29, 2013, the PUC issued a tentative order requesting public comments on the settlement of the informal investigation. No comments were filed, and the PUC Commissioners approved the settlement in an order issued on October 31, 2013.

On August 28, 2013, Respondent Mr. Kraus, a reporter for The Morning Call, submitted a request under the Right-to-Know Law (RTKL), Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, seeking a copy of: (1) all documents associated with I & E's investigation of PPL's storm restoration efforts; (2) the Tip Letter received by the BCS; (3) any responses provided by PPL; and (4) any internal audits provided by PPL. Reproduced Record (R.R.) at 25a. On August 30, 2013, Respondent Mr. Seder, staff writer for the Times Leader, submitted a RTKL request with the PUC seeking a copy of the Tip Letter received by the BCS. R.R. at 7a.

The PUC denied the RTKL requests, asserting that the requested information is confidential under Section 335(d) of the Public Utility Code and exempt from disclosure pursuant to Sections 708(b)(10) and 708(b)(17) of the RTKL, 65 P.S. §§ 67.708(b)(10), (b)(17). R.R. at 9a–13a, 29a–33a. Seder and Kraus filed separate appeals with the OOR. The OOR determined that Section 335(d) of the Public Utility Code, and not the RTKL, governed release of the document. R.R. at 21a. Pursuant to Section 335(d), the OOR directed the PUC to release a copy of the Tip Letter and the documents related to the investigation redacting any identifying information regarding the informant as well as the person accused of re-directing the repair crews. The OOR determined that the RTKL was not applicable to the Seder and Kraus Requests and declined to address whether the documents were exempt from disclosure under Sections 708(b)(17) and 708(b)(10) of the RTKL. These appeals followed.[1]

---

1. These appeals were consolidated by order of this Court. The Court also granted applications to intervene filed by the Associated Press, Calkins Media, Inc., Lancaster News-papers, Inc., PA Media Group, Philadelphia Media Network, LLC, Pocono Mountains Media Group, Reading Eagle Company, Times News, LLC, Times Shamrock and WNEP–TV.

Petitioners argue that the requested documents are not subject to disclosure under either the Public Utility Code or the RTKL. On January 24, 2014, Michael L. Swindler, prosecuting attorney for I & E, executed an amended affidavit in each of the cases (hereinafter Swindler Affidavits).[2] Swindler attested that the Tip Letter was the basis for PUC's non-criminal investigation into PPL. R.R. at 45a, 47a. Swindler stated that release of the Tip Letter would likely disclose the identity of a confidential source and potentially subject that person to economic retaliation, and that it also contained identifying information, which would operate to the prejudice or impairment of a person's reputation. *Id.* Swindler further asserted that I & E is PUC's prosecutory bureau and is separate from the Commissioners and PUC's advisory Law Bureau and does not communicate with the Commissioners or the Law Bureau as required by Section 308.2(b) of the Public Utility Code, 66 Pa. C.S. § 308.2(b). Finally, Swindler attested that "[n]o documents related to I & E's prosecutory investigation other than those specific documents contained in the Filing were made available to the Commissioners or their staffs for their consideration and in their deliberation of this settlement." *Id.* at 46a, 48a.

### The Public Utility Code

Section 335(d) of the Public Utility Code provides, in relevant part, the following grounds for release of documents:

Release of documents.—In addition to any other requirements imposed by law, including the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right–to–Know Law, and the act of July 3, 1986 (P.L. 388, No. 84), known as the Sunshine Act, *whenever the commission conducts an investigation of an act or practice of a public utility and makes a decision, enters into a settlement with a public utility or takes any other official action, as defined in the Sunshine Act, with respect to its investigation, it shall make part of the public record and release publicly any documents relied upon by the commission in reaching its determination, whether prepared by consultants or commission employees, other than documents protected by legal privilege....* For the purposes of this section, "a document" means a report, memorandum or other document prepared for or used by the commission in the course of its investigation whether prepared by an adviser, consultant or other person who is not an employee of the commission or by an employee of the commission.

66 Pa.C.S. § 335(d) (emphasis added). The PUC's regulations further provide that "[e]xcept for staff reports and other documents covered by a specific legal privilege, documents relied upon by the Commission in reaching its determination shall be made part of the public record." 52 Pa.Code § 3.113.

Section 102 of the Public Utility Code defines "Commission" as the "Pennsylvania Public Utility Commission of the Commonwealth." Section 301(a), 66 Pa.C.S. § 301(a), provides that the PUC is as an independent administrative agency and that the "commission shall consist of five members" appointed by the governor with the advice and consent of the senate. The PUC is divided into several bureaus and offices. 66 Pa.C.S. § 308. "Staff" is defined as the "Commission's Office of Trial Staff prosecutor or Law Bureau staff counsel and other Commission employees par-

**2.** By order dated March 31, 2014, Judge Leadbetter granted PUC's motion to submit the Swindler Affidavits into the record before this Court.

ticipating in a proceeding before the agency." 52 Pa.Code § 1.8.

The filing of informal complaints with the PUC and the conduct of informal investigations by PUC staff are authorized by 52 Pa.Code §§ 3.111 and 3.112. An informal investigation is a "matter initiated by the Commission staff that may result in a formal complaint, a settlement or other resolution of the matter or termination by letter." 52 Pa.Code § 1.8. The purpose of an informal investigation is "to gather data or to substantiate allegations of potential violations of the act and may be conducted with or without hearing." 52 Pa.Code § 3.113(a). The PUC may resolve an informal complaint in three ways: (1) by letter from PUC staff terminating the investigation where staff determines that no violation or potential violations exists; (2) by initiation of formal proceedings by PUC staff where a violation or a potential violation has occurred or; (3) by settlement executed and approved by the Commissioners at an open meeting where the utility has agreed to undertake action to address or remedy a violation or potential violation or to resolve another perceived deficiency at the utility. 52 Pa.Code § 3.113(b)(1)-(3). In approving or disapproving a settlement, the Commissioners must consider 10 factors including whether the conduct was of a serious nature, the consequences were of a serious nature, the utility made efforts to modify its conduct, and the amount of civil penalty necessary to deter future violations. 52 Pa.Code § 69.1201.

The Petitioners argue that the documents are not subject to release under Section 335(d) because they were not submitted to the Commissioners during consideration of the settlement agreement. The Petitioners contend that the only documents the Commissioners relied upon were the settlement agreement and the parties' respective statements in support of the settlement.

Section 335 of the Public Utility Code provides for procedures relating to initial decisions including the creation of a record and the release of documents. Subsections 335(a), (b) and (c) establish what constitutes the record or the docket before the PUC in the context of the Commissioners exercise of their adjudicatory powers to make an initial decision. In particular, Section 335(c) requires that the record reflect the "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law or discretion." Section 335(d) is broader than the previous subsections in that it provides for the potential disclosure of documents created or used during the course of a PUC investigation in addition to the documents of record in adjudicatory proceedings. Release of investigatory documents relied upon by the Commissioners would therefore reveal the reasoning and bases for their approval of a settlement agreement in a similar way as the record created in an adjudicatory proceeding. Under Section 335(d), the PUC must disclose documents related to an investigation if (1) the commission has made a decision, entered into a settlement with a public utility or taken any other official action under the Sunshine Act [3] and (2) the commission relied upon the documents in making its determination. Both these prerequisites must be met before documents are subject to disclosure. The key ques-

---

**3.** The Sunshine Act defines official action as: (1) recommendations made by an agency pursuant to statute, ordinance or executive order; (2) the establishment of policy by an agency; (3) the decisions on agency business made by an agency; (4) the vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order. 65 Pa. C.S. § 703.

tion before this Court is who constitutes the "commission" in this context.

 The use of "commission" in this portion of subsection 335(d) refers to the Commissioners, not the entirety of the PUC as argued by Respondents, because the Commissioners alone are empowered by majority vote to make a decision, enter into a settlement, or take official action. 66 Pa.C.S. § 301(d). Further, only the Commissioners' actions are subject to the requirements of the Sunshine Act. Respondents point out that Section 335(d) defines "document" as "a report, memorandum or other *document prepared for or used by the commission* in the course of its investigation." (Emphasis added). In this instance, "commission" can mean either the Commissioners or PUC staff. However, documents prepared by PUC staff are disclosable only if the Commissioners relied upon the documents.

 The first prerequisite to disclosure was satisfied when the PUC approved the settlement. The second prerequisite to disclosure was not satisfied because the Commissioners did not rely upon the requested documents in approving the settlement, as demonstrated by the Swindler Affidavits, which state that the Commissioners did not have access to and did not rely upon the requested documents in entering into a settlement with PPL. R.R. 46a, 48a (stating that the prosecution bureau does not communicate with the Commissioners or their staffs regarding ongoing prosecutorial investigations). We acknowledge that this allows the parties to a settlement great leeway in determining which documents are subject to disclosure under Section 335(d). Nevertheless, Section 335(d) is essentially an open docket provision solely concerned with providing access to the reasoning and bases for actions taken by the PUC, a goal which is accomplished through disclosure of the documents relied upon by the Commissioners and issuance of the opinion and order approving the settlement.

We must concede that Section 335(d) is not a model of clarity. Nonetheless, we believe this interpretation of legislative intent is supported not only by the reasons stated above, but also by the fact that this interpretation of Section 335(d) makes it consistent with the clear exemptions stated in the RTKL and the policies common to both statutes.

### *The Right–To–Know Law*

Petitioners also argue that the requested documents are not subject to disclosure under the RTKL.[4] Petitioners assert that the requested documents are exempt from disclosure under Section 708(b)(17), the noncriminal investigation exemption, and Section 708(b)(10), the predecisional deliberation exemption.[5]

 Section 708(b)(17) exempts from disclosure records of an agency relating to a noncriminal investigation including complaints submitted to an agency, investiga-

---

4. Section 306 of the RTKL, 65 P.S. § 67.306, provides that "nothing in this act shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." Section 3101.1 of the RTKL, 65 P.S. § 67.3101.1, further states that "if the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply."

5. Section 708(b)(10) exempts from disclosure a record that reflects the internal, predecisional deliberations of an agency, including a contemplated or proposed course of action or any research, memos or other documents used in the predecisional deliberations. As we have determined that the requested documents are exempt as part of a noncriminal investigation under Section 708(b)(17), we will not address the predecisional deliberations argument.

tive materials, notes, correspondence and reports, a record that includes the identity of a confidential source, a record that includes information made confidential by law, and record that, if disclosed, would reveal the institution, progress or result of an agency investigation. The imposition of a fine or civil penalty or an executed settlement agreement is not exempted unless the agreement is determined to be confidential by a court. In construing the noncriminal investigation exemption, this Court has concluded that, as used in Section 708(b)(17), the term "investigation" means "a systematic or searching inquiry, a detailed examination, or an official probe." *Coulter v. Dep't of Pub. Welfare*, 65 A.3d 1085, 1088 (Pa.Cmwlth.2013). Thus, this exception precludes disclosure of materials related to noncriminal investigations conducted by an agency acting within its legislatively-granted fact-finding and investigative powers. *Johnson v. Pa. Convention Ctr. Auth.*, 49 A.3d 920, 925 (Pa.Cmwlth.2012).

■ Petitioners assert that the Tip Letter is a complaint and therefore, is exempt from disclosure under Section 708(b)(17)(i). An informal complaint is a "document or communication to the Commission seeking action on a matter that lacks the legal or other requirements of a formal complaint under 66 Pa.C.S. § 701 and does not involve a legal proceeding before a presiding officer or mediator." 52 Pa.Code § 1.8. We conclude that the Tip letter is exempt from disclosure because it was the basis for I & E's institution of an informal investigation pursuant to the PUC's legislatively-granted fact-finding and investigative powers. 52 Pa.Code § 3.113; *Johnson*, 49 A.3d at 926 (holding that a notice of dispute submitted to convention center by

union was not a complaint exempt from disclosure because it was submitted to the convention center in the context of a collective bargaining agreement and customer satisfaction agreement rather than pursuant to convention center's legislatively-granted investigative powers).

Petitioners also contend that the requested documents were used by I & E in deciding whether to institute an investigation of PPL and to guide the investigation, thus revealing the institution and progress of an investigation. In *Pennsylvania Public Utility Commission v. Gilbert*, 40 A.3d 755 (Pa.Cmwlth.2012), a reporter requested, *inter alia*, documents related to underground natural gas pipelines including probable violations of Pennsylvania statutes or the Pennsylvania Code, all enforcement action taken by the PUC, safety records, and pipeline incident reports. This court found that the PUC acted pursuant to its powers under the Pipeline Safety Act, 49 U.S.C. §§ 60101–60137, to inspect interstate pipelines for compliance with applicable state and federal gas safety regulations. The Court determined that the requested records were exempt from disclosure because they were generated by I & E's gas safety inspectors during inspections and ensuing determinations on whether to prosecute. Additionally, the Court found that strong public policy considerations supported its conclusion because disclosure of the investigators' notes, employee statements, and other materials related to the investigations could lead to public utilities and employees being less likely to cooperate and provide relevant information out of fear of retaliation or public embarrassment. *Gilbert*, 40 A.3d at 761.[6]

6. The Court noted that under Section 335(d) "[i]t is not until after the PUC's investigative materials are presented as part of a formal

complaint, presented at a formal hearing, or presented as part of a settlement agreement that the materials are made public." *Gilbert*,

■ Similarly, we conclude that the documents associated with I & E's investigation of PPL's storm restoration efforts, any responses provided by PPL, and any internal audits provided by PPL are also exempt from disclosure under the non-criminal investigation exemption because the documents were created or collected as part of an informal investigation, the purpose of which was to determine compliance with regulations, the existence of any violations of the law and whether to pursue prosecution. Swindler Affidavits at 1; R.R. at 47a. Further, requiring the PUC to disclose the requested documents could lead to public utilities and employees being less likely to cooperate and provide relevant information out of fear of retaliation or public embarrassment, frustrating the purpose of PUC's investigations and lessening the effectiveness of the PUC in monitoring the utilities' compliance with statutory and regulatory requirements.

### Swindler Memorandum

■ The PUC has also asserted that a document created by Swindler, which provided legal research analyzing whether the allegations raised against PPL violated the Public Utility Code is exempt from disclosure under the attorney-work product doctrine, Section 335(d) of the Public Utility Code and Section 305(a)(2) of the RTKL, 65 P.S. § 67.305(a)(2).

Section 305(a)(2) of the RTKL, 65 P.S. § 67.305(a)(2), provides that records in possession of the Commonwealth are presumed to be public unless they are protected by privilege. The RTKL defines privilege as: "[t]he attorney work-product doctrine, the attorney-client privilege ... or other privilege recognized by a court incorporating the laws of this Common-

wealth." Section 102 of the RTKL, 65 P.S. § 67.102. With respect to the RTKL, this Court recently has held the work-product doctrine protects the "mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation" from disclosure. *Levy v. Senate of Pa. (Levy III)*, 94 A.3d 436, 443 (Pa.Cmwlth.2014). Section 335(d) of the Public Utility Code specifically exempts from disclosure documents protected by legal privilege.

The Swindler memorandum was prepared by an attorney in preparation for litigation and contains attorney-to-attorney communications. R.R. at 47a. Consequently, the memorandum is not subject to disclosure under either Section 335(d) or the RTKL.

For all of the foregoing reasons, we reverse.

### ORDER

AND NOW, this 3rd day of December, 2014, the order of the Office of Open Records is hereby REVERSED.

■

---

40 A.3d at 760. In this case, the PUC's investigative materials were not presented to the

Commissioners as part of the settlement.