# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of Labor   :
and Industry,   :
                 Petitioner   :
                       :
            v.            :   No. 1477 C.D. 2019
                       :   Submitted: August 7, 2020
                       :
Joseph E. O'Connor,   :
                Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**

**MEMORADUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: March 22, 2021**


The Pennsylvania Department of Labor and Industry (Department) petitions for review of the September 25, 2019 Final Determination of the Office of Open Records (OOR), which granted Joseph E. O'Connor's (Requester) appeal of the Department's denial of his Request for elevator inspection reports under the Right-to-Know Law (RTKL).[1]  OOR ordered the Department to provide Requester with all responsive records within 30 days of the Final Determination.  On appeal to this Court, the Department argues that OOR's Final Determination should be reversed or vacated and this matter remanded because:  OOR modified Requester's Request when it incorrectly assessed the nature of the records requested; OOR erred when it

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

determined that the Uniform Construction Code[2] (UCC) does not make the records confidential; OOR incorrectly interpreted this Court's precedent regarding noncriminal investigations; and OOR neglected to follow its own precedent regarding the UCC and elevators without providing an adequate reason for doing so. Upon review, we vacate and remand for OOR to develop an evidentiary record and apply this Court's recent decision in *Pennsylvania Department of Labor & Industry v. Darlington*, 234 A.3d 865 (Pa. Cmwlth. 2020).

## I. BACKGROUND

On August 12, 2019, Requester filed a Request with the Department's Agency Open Records Officer seeking "all the elevator inspection reports (pass or fail) for modernization & construction jobs in the [C]ity of Philadelphia from January 1st 2017[,] to August 12th 2019." (Reproduced Record (R.R.) at 10a.) The Department denied the Request, stating "records of the Department relating to a noncriminal investigation . . . and records that would reveal the institution, progress, or result of a Department investigation are exempt from disclosure under the RTKL." (*Id.* at 11a.) The Department also noted that the records did not fall within any exception to the noncriminal investigation exemption, specifically that the records did not include any indication of an "imposition of a fine or civil penalty; the suspension, modification, or revocation of a license, permit, registration, certification, or similar authorization; or an executed settlement agreement." (*Id.*)

On August 26, 2019, Requester appealed to OOR stating that "[t]he records that I have requested do not fall within any exception from disclosure listed in the statute." (*Id.* at 8a-9a.) The Department issued a response stating that "[b]ecause the weight of the evidence establishes that the requested records are exempt from

---

[2] 34 Pa. Code §§ 405.1-405.12.

disclosure, the Department's denial should be affirmed." (*Id*. at 19a.) The Department explained that under the Pennsylvania Construction Code Act[3] (Act) and the UCC, the Department is to conduct an "acceptance inspection" for a new or repaired elevator as well as "periodic inspections," and produce reports on these inspections, and that OOR previously determined the Department's "inspection and investigatory records are investigative materials that would reveal the institution, progress or result of such investigations." (*Id*. at 20a (citing *Lombardo v. Pa. Dep't of Labor & Indus.* (Pa. O.O.R.D., No. AP 2017-0054, Feb. 7, 2017); *Holden & CBS 3 KYW-TV v. Pa. Dep't of Labor & Indus.* (Pa. O.O.R.D., No. AP 2016-1490, Nov. 1, 2016); and *Groen v. Pa. Dep't of Labor & Indus.* (Pa. O.O.R.D., No. AP 2011-1148, Sept. 26, 2011)).) In addition, the Department produced an attestation by Matthew W. Kegg, Director of the Department's Bureau of Occupational and Industrial Safety (BOIS). (*Id*.) Mr. Kegg stated that BOIS conducted a thorough examination of the files for records responsive to the Request, which led BOIS to determine that the "records exist and were created solely because of the Department's statutory mandate to inspect the elevators" and thus fall under the noncriminal investigation exemption. (*Id*. at 20a, 22a-23a.)

OOR contacted the parties, seeking additional information as to whether any of the inspection reports were generated after an accident report was received for any given elevator. (*Id*. at 26a.) In response to the request, the Department provided an additional attestation by Mr. Kegg stating that "[s]ome of the elevator inspections are regular inspections performed on a periodic basis," while others "are the direct result of an elevator incident or a complaint." (*Id*. at 29a.) Mr. Kegg noted he could not provide an exact number due to the "hundreds if not thousands of elevators" in

---

[3] Act of November 10, 1999, P.L. 491, 35 P.S. §§ 7210.101-7210.1103.

3

Philadelphia and the lack of ability to track the type of inspection with the current "electronic record-keeping system." (*Id*.) Based on Mr. Kegg's experience, he concluded that "the Department has conducted multiple elevator inspections and investigations in the [C]ity of Philadelphia in response to an incident or complaint during the time period specified in the [R]equest underlying this appeal." (*Id*. at 30a.)

Although the parties did not request a hearing, pursuant to Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1),[4] OOR sought an extension of time to make its Final Determination from Requester "in order to hold a hearing and to develop the record further." (Final Determination at 3.) When Requester did not respond to OOR's request, "OOR relied on the evidence before it to render a decision in this matter."[5] (*Id*.) The Final Determination granted Requester's appeal and directed the Department to provide all responsive records within 30 days. OOR found that the UCC and the Act empower the Department to perform acceptance and periodic inspections on elevators under its jurisdiction. (*Id*. at 4-5.) In reviewing the evidence before OOR, including the attestations of Mr. Kegg, OOR concluded that the inspections "do not rise to the level of a noncriminal investigation." (*Id*. at 5.) In

---

[4] Section 1101(b)(1) states that "[u]nless the requester agrees otherwise, the appeals officer shall make a final determination which shall be mailed to the requester and the agency within 30 days of receipt of the appeal . . . ." 65 P.S. § 67.1101(b)(1).

[5] Attached to both the Department's petition for review and brief is an email sent from OOR to the parties, in which OOR sought Requester's permission to extend the deadline for OOR's issuance of a final determination in order to hold a hearing. Although this email is not in the certified record, Requestor has not objected to the email or challenged its authenticity. Accordingly, in the interests of justice, we will treat it as part of the record on appeal. *See Moyer v. PPL Elec. Utils. Corp.* (Pa. Cmwlth., No. 587 C.D. 2019, filed Oct. 23, 2020), slip op. at 9 n.11 (citing *M.A. Bruder & Son, Inc. v. Workmen's Comp. Appeal Bd. (Harvey)*, 485 A.2d 93, 95 n.2 (Pa. Cmwlth. 1984)). *Moyer* is cited as persuasive authority pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

reaching this conclusion, OOR set forth the standard for noncriminal investigations, as established by this Court in *Department of Health v. Office of Open Records*, 4 A.3d 803 (Pa. Cmwlth. 2010). Specifically, OOR explained that, to constitute a noncriminal investigation, "an agency must demonstrate that 'a systematic or searching inquiry, a detailed examination, or an official probe' was conducted regarding a noncriminal matter," which was "'conducted as part of an agency's official duties.'" (Final Determination at 4 (quoting *Dep't of Health*, 4 A.3d at 810-11, 814).) Furthermore, OOR stated that "the investigation must specifically involve an agency's legislatively granted fact-finding powers." (*Id.* at 5.)

OOR explained that the UCC clearly differentiates between inspections and investigations and there is no evidence that elevator inspections are similar to the previous inspections analyzed by this Court, such as in *Department of Health*. (*Id.* at 6-7.) "Unlike [] [*Department*] *of Health*," OOR reasoned, "the [UCC] requires that an inspection report contain only the inspection results, date of inspection, beginning and conclusion times of inspection, construction code official's certification number[,] and electronic signature." (*Id.* at 6.) OOR also differentiated this current matter from prior OOR cases involving elevators on the basis that those cases specifically involved inquiries made following incidents and injuries. (*Id.* at 7.) OOR stated that "the Department has not provided any evidence demonstrating that the requested inspection reports relate to" an investigation made in connection to an accident or report. (*Id.* at 8.) Therefore, OOR concluded that the Department had not met its burden of proving that the reports fall under the noncriminal investigation exemption. The Department filed a Petition for Reconsideration, asserting the same issues it raises to this Court and requesting a hearing. OOR

5

denied the Petition for Reconsideration. The Department thereafter filed a petition for review with this Court.

## II.    DEPARTMENT'S ARGUMENTS

On appeal,[6] the Department argues that OOR erred by concluding that the elevator inspection records did not relate to a noncriminal investigation. First, the Department contends that "OOR misconstrued the nature of the records requested" and, thus, erroneously modified the Request. (Department's Brief (Br.) at 11.) The Department reasons that the Request sought inspections related to a "construction job" or "modernization" job, and, therefore, must be referring to a new elevator or an elevator that was under repair. (*Id*. at 12-13.) Thus, the Department asserts that the Request sought only the acceptance inspections outlined in Section 405.5 of the UCC, 34 Pa. Code § 405.5, not the periodic inspections under Section 405.7 of the UCC, 34 Pa. Code § 405.7. (*Id*. at 12.) The Department cites to OOR's multiple references to the requested records as "routine" or "periodic" inspections to support this argument. (*Id*. at 13 (citing R.R. at 37a-39a).) For further support, the Department contends that OOR only discussed the requirements of periodic inspection reports in its Final Determination. (*Id*. at 14.) The Department argues that there is a difference between acceptance inspections and periodic inspections. For instance, the Department asserts "acceptance inspections[] are significantly more extensive than periodic inspections and entail more elaborate investigative

---

[6] Our scope of review of the RTKL is plenary. *Pa. Pub. Util. Comm'n v. Gilbert*, 40 A.3d 755, 758 n.5 (Pa. Cmwlth. 2012). Our standard of review in open records cases is an independent review of OOR's final determination, and we may substitute OOR's findings of fact with our own. *Id*. "A court reviewing an appeal from an OOR hearing officer is entitled to the broadest scope of review, a review of the entire record on appeal along with other material, such as a stipulation of the parties, or an in camera review of the documents at issue, and we may further supplement the record through hearing or remand." *Id*.

procedures." (*Id.* at 15.) As a result, acceptance inspections may only be conducted by Departmental inspectors, whereas periodic inspections may be completed by licensed third-party inspectors. (*Id.*) The Department also contends that acceptance inspection reports contain more detailed information than periodic inspection reports and list deficiencies that are found. (*Id.* at 15-16.)

Because of OOR's mistake in expanding the scope of the Request, the Department asserts that OOR erred in determining that Section 403.85(e) of the UCC, 34 Pa. Code § 403.85(e), which prohibits disclosure of certain construction related records, does not apply. The Department argues that acceptance inspection reports qualify as construction-related records and are not subject to the RTKL. (*Id.* at 16-17.)

Next, the Department contends that OOR erred in finding that elevator inspections do not rise to the level of a noncriminal investigation. (*Id.* at 21.) Specifically, the Department reiterates its argument that the only type of inspection here is an acceptance inspection. (*Id.*) Furthermore, the Department asserts that OOR's Final Determination is inconsistent with *Department of Health, Pennsylvania Public Utility Commission v. Gilbert*, 40 A.3d 755 (Pa. Cmwlth. 2012), *Department of Environmental Protection v. Delaware Riverkeeper Network*, 113 A.3d 869 (Pa. Cmwlth. 2015), and *Michak v. Department of Public Welfare*, 56 A.3d 925 (Pa. Cmwlth. 2015), because those cases have found that a "triggering event" is not required for an "official probe" to qualify as a "noncriminal investigation." (*Id.* at 21-27.) The Department also asserts that OOR's Final Determination improperly relied on public policy arguments that only apply to periodic inspection reports and not acceptance inspection reports. (*Id.* at 27-28.) The Department contends that OOR was incorrect in finding that allowing the public

7

access to the records would incentivize the Department and owners to alleviate any issues with inspections. (*Id.* at 28.) Instead, the Department asserts that the incentive is already there without this public policy argument because the elevators cannot be put into service without passing an acceptance inspection. (*Id.*)

Lastly, the Department argues that OOR's attempt to differentiate this case from OOR's own previous elevator cases was inadequate. (*Id.* at 29.) The Department argues that in all prior cases regarding an elevator incident or accident, "OOR found that **all** elevator inspection reports, including those not conducted in response to the incident or accident, were found to be exempt from disclosure." (*Id.* (emphasis in original).) The Department contends that "[i]n the present case[,] as well as in prior OOR determinations, the responsive records relate to the Department's investigation into the condition and operation of elevators and are conducted for the purpose of ensuring the safety of passengers who utilize the elevators." (*Id.* at 31.)

Requestor did not submit a brief in this matter and was precluded from doing so due to noncompliance with the briefing schedule.

## III. DISCUSSION

A Commonwealth agency's records are presumed to be public unless they fall within an exemption under the RTKL. *Gilbert*, 40 A.3d at 758. An agency is permitted to withhold "[a] record of [the] agency relating to a noncriminal investigation," which includes "investigative materials, notes, correspondence[,] and reports," and records that would "[r]eveal the institution, progress[,] or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification[,] or similar authorization issued by an agency" or "[c]onstitute an unwarranted invasion of

privacy." Section 708(b)(17)(ii), (vi)(A), and (vi)(C) of the RTKL, 65 P.S. § 67.708(b)(17)(ii), (vi)(A), and (vi)(C). However, neither the term "noncriminal" nor the term "investigation" are defined by the RTKL. In previous cases, this Court interpreted "noncriminal" to mean "the exemption of investigations other than those that are criminal in nature." *Gilbert*, 40 A.3d at 759 (citing *Dep't of Health*, 4 A.3d at 810). The Court has interpreted an "investigation" to mean "a systematic or searching inquiry, a detailed examination, or an official probe." *Dep't of Health*, 4 A.3d at 811. The burden is on the Department to prove, by a preponderance of the evidence,[7] that the records requested are exempt from disclosure. *See* 65 P.S. § 67.708(a)(1).

This Court recently addressed the noncriminal investigation exemption of the RTKL in *Darlington*. There, we considered whether inspections of boilers, which are also performed by the Department, can be considered noncriminal investigations and, thus, exempt from disclosure. The requester sought records, including inspection and investigation reports, relating to an incident which occurred at an energy plant. The Department denied this request, claiming the inspections and investigations were conducted pursuant to its authority under the Boiler and Unfired Pressure Vessel Law (Boiler Law),[8] and, therefore, were exempt as noncriminal investigations and none of the exceptions to the exemption applied. *Darlington*, 234 A.3d at 868. The requester appealed to OOR, challenging the "blanket denial." *Id*. The Department filed a position statement and proffered the attestations of Mr. Kegg, who stated that these records fell under the noncriminal investigation

---

[7] "The preponderance of the evidence standard, which is 'the lowest evidentiary standard, is tantamount to a more likely than not inquiry.'" *Smith on behalf of Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 161 A.3d 1049, 1059 n.10 (Pa. Cmwlth. 2017) (citation omitted).

[8] Act of June 18, 1998, P.L. 655, 35 P.S. §§ 1331.1-1331.18.

9

exemption. *Id*. Furthermore, Mr. Kegg also stated that some of the inspections were "performed on a periodic basis," while others were the result of an "incident or a complaint." *Id*. at 869. OOR determined that the records related to the investigation into the boiler incident were exempt as records of a noncriminal investigation, and ordered the field boiler inspection reports to be released. This Court affirmed.

For the noncriminal investigation exemption to apply, the Court held the Department must show how that inspection "surpass[es] the [Department]'s routine performance of its duties." *Id*. at 877 (citation omitted). Of note and crucial to our determination in that case, this Court examined the Boiler Law and concluded that the law clearly **distinguished** between a "field inspection" and an "investigation" within the law itself, as different sections utilized these two different terms. *Id*. at 875. We also highlighted that field inspections need not be performed by the Department and instead may be performed by an outside inspector. *Id*. at 875-76. Furthermore, field inspections themselves, and what they involved, were not described in any detail by the Department or Mr. Kegg in his attestations in that case. Specifically, we held that "Mr. Kegg made conclusory statements that the inspection reports 'contain information relating to whether or not deficiencies were uncovered by inspectors' and that 'they constitute records that would reveal the institution, progress[,] or result of an agency investigation.'" *Id*. at 877. Thus, the Court determined that it could not conclude that "the Department [was] making a systematic and searching inquiry, a detailed examination, or an official probe . . . ." *Id*. at 876-77.

Turning to the case before us, we begin with the Department's argument that OOR erroneously modified the scope of the Request as seeking periodic inspection reports instead of acceptance inspection reports. By conflating the two different

types of inspections, the Department argues, OOR ordered release of records that should be exempt either as noncriminal investigations under the RTKL or pursuant to Section 403.85(e) of the UCC.

The Act establishes that the Department has administration and inspection authority over elevators within the Commonwealth. Section 105(c)(1) of the Act, 35 P.S. § 7210.105(c)(1). Under the UCC, the Department holds the permitting power over elevators and is charged with issuing, suspending, or revoking permits. Section 405.3 of the UCC, 34 Pa. Code § 405.3. When an elevator is newly installed or under repair, the Department shall conduct an "**acceptance inspection**." 34 Pa. Code § 405.5 (emphasis added). A certificate of operation will not be issued by the Department until the elevator passes this inspection. Section 405.6 of the UCC, 34 Pa. Code § 405.6. However, this is **not** the only mandated inspection required for an elevator to be considered compliant with the UCC. "A construction code official of the Department or a third-party agency shall conduct periodic inspections and document compliance with the [UCC] at intervals that do not exceed 6 months . . . ." 34 Pa. Code § 405.7(a). These **periodic inspections** lead to an inspection report, which under the UCC, contains: the results, the date of the inspection, the beginning and conclusion times of the inspection, the inspection official's certification number, and the inspection official's signature. 34 Pa. Code § 405.7(c). Furthermore, should an **accident** occur involving "[f]atal injury or hospitalization to a person" or "[d]amage to the elevator . . . rendering it unsafe . . . ," an owner or authorized agent "shall submit an accident report to the Department . . . ." Section 405.11(a)(1)-(2) of the UCC, 34 Pa. Code § 405.11(a)(1)-(2). The Department, in turn, "may order an **investigation** of the accident." 34 Pa. Code § 405.11(c)

11

(emphasis added). The UCC is silent as to what an acceptance inspection report contains.

Here, the Request sought "all the elevator inspection reports (pass or fail) **for modernization & construction jobs** in the [C]ity of Philadelphia from January 1st 2017[,] to August 12th 2019." (R.R. at 10a (emphasis added).) Based upon this language, the Department interprets the Request as relating only to **acceptance** inspection reports, which are issued following an inspection of a new elevator or one being placed back into service following repair. While the Department's interpretation seems reasonable on its face, without development of a factual record, it is impossible for the Court to determine whether only acceptance inspections would be performed for modernization and construction jobs or if a periodic inspection would have also been performed.

In addition, from a review of the Final Determination, it is not clear to the Court whether OOR determined the scope of the Request or understood its potential import to whether the requested records should be disclosed. OOR briefly mentions the Department is empowered to conduct acceptance inspections and periodic inspections, (Final Determination at 4), but then discusses **only periodic** inspections. For example, OOR stated that "an inspection report contain[s] only the inspection results, date of inspection, beginning and conclusion times of inspection, construction code official's certification number and electronic signature." (*Id*. at 6 (citing 34 Pa. Code § 405.7(c)).) However, the section cited by OOR applies **only** to **periodic elevator** inspection reports. The UCC is silent as to what an acceptance elevator inspection report entails, as is the record.

Moreover, although it is not clear whether OOR determined what type of inspection reports the Request actually sought, OOR appears to only compare

**periodic inspections**, under Section 405.7, to **investigations**, under Section 405.11, (Final Determination at 7), to reach the conclusion that "routine elevator inspections under the [UCC] do not rise to the level of a noncriminal investigation," (*id.* at 8).[9] However, as stated above, it is unclear whether the Request sought periodic inspection reports, acceptance inspection reports, or both, or whether acceptance inspections can be considered what OOR called "routine." If the Request does only seek acceptance inspection reports, it is uncertain whether OOR would have reached the same conclusion and ordered the disclosure of the records. The Department argues that OOR would have reached the opposite conclusion had OOR understood the Request as seeking acceptance inspection reports because acceptance inspections are different and significantly more involved than periodic inspections. Aside from the Department's assertions to this Court to this effect, there is no evidence of record regarding what acceptance inspections entail.

Although the Department bore the burden of establishing that the records were exempt, under the circumstances, the Court cannot fault the Department for not presenting more evidence to OOR on the distinction between acceptance inspections and periodic inspections. First, as the Department stated in its position statement to OOR, prior decisions of OOR held that BIOS's inspection records were "investigative materials that [] reveal the institution, progress[,] or result of such investigations." (R.R. at 20a.) Therefore, the Department had no reason to expect OOR to depart from its prior decisions. Second, OOR only requested additional information from the Department about whether any of the inspection reports were generated after an accident report was received by the Department. (*Id.* at 26a.)

---

[9] OOR's Final Determination states that "the Request does not ask for investigative reports or any other documents related to a Department investigation conducted as the result of an accident." (Final Determination at 8.) Thus, those records were not ordered disclosed.

13

Thus, it was reasonable for the Department to respond with Mr. Kegg's second attestation, which focused only on the information OOR specifically requested. Third and finally, at the time, neither the Department nor OOR had the benefit of this Court's decision in *Darlington*, which clarified the noncriminal investigation exemption, particularly involving inspections within the purview of the Department.

Because OOR did not address the scope of the Request or the alleged difference between acceptance inspections and periodic inspections, the impact on OOR's analysis of the noncriminal investigation exemption is uncertain.

Similarly, it is not clear whether OOR's review of the applicability of Section 403.85(e) of the UCC would have been different had OOR fully appreciated the distinction. Section 403.85(e) of the UCC states that "[t]he Department . . . may prohibit release of applications received, building plans and specifications, **inspection reports**[,] and similar documents to the public under the" RTKL. 34 Pa. Code § 403.85(e) (emphasis added). This section of the UCC is entitled "Release, retention and sharing of commercial construction records." Section 306 of the RTKL provides that "[n]othing in th[e RTKL] shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." 65 P.S. § 67.306. OOR only briefly addressed Section 403.85 in a footnote, stating that the UCC "does not contain a prohibition regarding the release of elevator inspection reports under the RTKL. 34 Pa. Code § 403.85 (permitting the Department to withhold certain construction-related records). Therefore, the reports are not facially noncriminal investigative records that are exempt under the RTKL." (Final Decision at 6 n.2.) The meaning of Section 403.85(e) of the UCC, or its application to the reports at issue, is unclear and not addressed by OOR.

14

It appears that OOR might have recognized the potential issues now raised on appeal because, on the day the Final Determination was due, OOR requested an extension of time so that a hearing could be held to develop an evidentiary record. (Final Determination at 3 (citing 65 P.S. § 67.1101(b)(1)).) When Requester did not respond, OOR issued its Final Determination. Because it does not appear OOR determined the scope of the Request, the Court vacates OOR's Final Determination and remands this matter for further development of the factual record. Upon remand, OOR shall accept evidence as to what type of records the Request sought and the differences between acceptance and periodic inspections conducted by the Department. Applying this Court's reasoning in *Darlington*, OOR should then consider whether the requested documents are exempt from disclosure as a noncriminal investigation under the RTKL and/or by Section 403.85(e) of the UCC.

## IV. CONCLUSION

After review of OOR's Final Determination, it is not clear what type of inspections – acceptance and/or periodic – Requester was seeking. It is apparent, however, that there was confusion related to the difference between the inspection types. As a result, it is not clear whether the inspection reports sought are exempt as a noncriminal investigation, otherwise exempt from disclosure by Section 405.83(e) of the UCC, or neither. Accordingly, we vacate OOR's Final Determination and remand this matter for OOR to develop an evidentiary record and to address the application of *Darlington* and the asserted exemptions in this case.

_____
**RENÉE COHN JUBELIRER,** Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of Labor    :
and Industry,    :
           Petitioner    :
   :
   :
        v.           :    No. 1477 C.D. 2019
   :
   :
Joseph E. O'Connor,    :
          Respondent    :

## O R D E R

**NOW**, March 22, 2021, the Final Determination of the Office of Open Records (OOR), dated September 25, 2019, is **VACATED** and this matter is **REMANDED**. Upon remand, OOR shall accept evidence related to what type of records were being sought and the differences between acceptance and periodic inspections conducted by the Pennsylvania Department of Labor and Industry. OOR shall also consider the Court's reasoning in *Pennsylvania Department of Labor & Industry v. Darlington*, 234 A.3d 865 (Pa. Cmwlth. 2020), and determine whether the requested documents are exempt from disclosure as part of a noncriminal investigation under Section 708(b)(17) of the Right-to-Know Law, 65 P.S. § 67.708(b)(17),[1] and/or by Section 403.85(e) of the Uniform Construction Code, 34 Pa. Code § 403.85(e).

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.608.