**[J-3A&B-2016] [M.O. – Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| PENNSYLVANIA PUBLIC UTILITY COMMISSION | : No. 52 MAP 2015 |
| | : |
| | : Appeal from the Order of the |
| v. | : Commonwealth Court dated 12/3/14 at |
| | : No. 2132 C.D. 2013 reversing the order |
| ANDREW SEDER/THE TIMES LEADER | : of the Office of Open Records at No. AP |
| | : 2013-1858 entered on 11/4/13 |
| WNEP-TV, CHANNEL 16; TIMES SHAMROCK; TIMES NEWS, LLC; THE ASSOCIATED PRESS; READING EAGLE COMPANY; PPL ELECTRIC UTILITIES CORPORATION; POCONO MOUNTAIN MEDIA GROUP; PHILADELPHIA MEDIA NETWORK, LLC, PA MEDIA GROUP; LANCASTER NEWSPAPER, INC.; CALKINS MEDIA INC., | : : : ARGUED: November 18, 2015 : RESUBMITTED: January 20, 2016 : : : : : |
| Intervenors | : : : : |
| APPEAL OF: ANDREW SEDER/THE TIMES LEADER; ASSOCIATED PRESS; CALKINS MEDIA INC.; LANCASTER NEWSPAPER INC.; PA MEDIA GROUP; PHILADELPHIA MEDIA NETWORK, LLC; POCONO MOUNTAINS MEDIA GROUP; READING EAGLE COMPANY; AND TIMES NEWS, LLC | : : : : : : : : : |
| PENNSYLVANIA PUBLIC UTILITY COMMISSION | : No. 53 MAP 2015 |
| | : |
| | : Appeal from the Order of the |
| | : Commonwealth Court dated 12/3/14 at |
| v. | : No. 2254 C.D. 2013 reversing the order |
| | : of the Office of Open Records at No. AP |
| | : 2013-1986 entered on 11/20/13 |
| SCOTT KRAUS/THE MORNING CALL | : |
| | : |

| | |
|---|---|
| WNEP-TV, CHANNEL 16; TIMES SHAMROCK; TIMES NEWS, LLC; THE ASSOCIATED PRESS; READING EAGLE COMPANY; PPL ELECTRIC UTILITIES CORPORATION; POCONO MOUNTAIN MEDIA GROUP; PHILADELPHIA MEDIA NETWORK, LLC, PA MEDIA GROUP; LANCASTER NEWSPAPER, INC.; CALKINS MEDIA INC., | ARGUED: November 18, 2015 RESUBMITTED: January 20, 2016 |
| Intervenors | |
| APPEAL OF: SCOTT KRAUS/THE MORNING CALL; ASSOCIATED PRESS; CALKINS MEDIA INC.; LANCASTER NEWSPAPER INC.; PA MEDIA GROUP; PHILADELPHIA MEDIA NETWORK, LLC; POCONO MOUNTAINS MEDIA GROUP; READING EAGLE COMPANY; AND TIMES NEWS, LLC | |

### DISSENTING OPINION

**CHIEF JUSTICE SAYLOR**                    **Decided: May 25, 2016**

Because the term "commission" is a defined term under the Public Utility Code, the majority finds itself bound to interpret the word, as used in Section 335(d), as pertaining not only to official action by the Commissioners but also to a wide range of subordinate actions by the PUC as a whole, encompassing its investigative arm. *See* Majority Opinion, *slip op.* at 13.

Throughout the Public Utility Code, however, there are numerous instances in which the Legislature used the term "commission" in a fashion that only could refer to the Commissioners. For example, the "commission" is empowered to make certain appointments, 66 Pa.C.S. §§304-306; the "commission" sets rules for excluding certain

evidence at hearings, *id.* §332(b); and the "commission" may preside at the reception of evidence, *id.* §335(a). The Bureau of Investigation and Enforcement ("I&E") has little to do with any of these functions. Accordingly, and consistent with the Commonwealth Court's reasoning, it seems clear that the General Assembly often has utilized the term "commission" to refer to the tier of the Public Utility Commission concerned with the subject matter at hand.

Given such context-dependent use of the term "commission," I am not persuaded that the definitional language relied upon by the majority is dispositive. Moreover, I find Section 335(d) to be ambiguous in material regards.

On the one hand, Section 335(d) reasonably may be read to extend its disclosure requirement to the stage at which a settlement agreement is "enter[ed] into," 66 Pa.C.S. §335(d), which in this case occurred at the staff level. *See* Joint Settlement Agreement dated Mar. 25, 2013, in *PUC v. PPL Elec. Util. Corp.*, No. M-2013-2275471 (PUC), at ¶¶9, 27 (attesting that I&E and PPL were duly authorized to execute the settlement agreement, and that the agreement had been "entered into," albeit that it was conditioned upon the Commissioners' subsequent approval under Section 3.113 of Title 52 of the Pennsylvania Code). On the other hand, Section 335(d) classifies entry into settlement agreements as being within the category of "official action" as defined in the Sunshine Act, *see* 66 Pa.C.S. §335(d) (conditioning mandatory disclosure upon, *inter alia*, "ent[ry] into a settlement . . . or *any other* official action, as defined in the Sunshine Act" (emphasis added)), a classification which *excludes* administrative action such as I&E's entry into a settlement agreement.

In this regard, the Sunshine Act defines "official action" as follows:

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa.C.S. §703. A core requirement of this open-meetings regime is that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public[.]" *Id.* §704. The concept of "agency business" subject to such requirement, however, expressly excludes "administrative action," defined as "[t]he execution of policies relating to persons or things as previously authorized or required by official action of the agency adopted at an open meeting of the agency." *Id.* §703.

I&E's entry into a settlement agreement plainly is not the type of activity subject to the terms of the Sunshine Act's open-meetings requirement, because it is a form of routine administrative action by an executive arm per preexisting authority (namely, authorization per Section 3.113 of Title 52 of the Pennsylvania Code). Therefore, material disharmony arises from Section 335(d)'s depiction of "entry" into a settlement as being within the purview of "official action" for purposes of the Sunshine law. 66 Pa.C.S. §335(d).

Ordinarily the plain language of an enactment offers the best guide to discernment of legislative intent. *See* 1 Pa.C.S. §1921(b). Where the terms of a statute are ambiguous, however, courts generally apply salient principles of statutory construction, including evaluation of the occasion and necessity for the statute under review, contemplation of the object to be attained, and appreciation for the consequences of particular interpretations. *See* 1 Pa.C.S. §1921(c).

With such considerations in mind, I agree with the PUC, PPL, and their *amicus* that Section 335(d) has an open-meetings orientation, given its express cross-reference to the Sunshine Act and associated "official action" nexus. 66 Pa.C.S. §335(d). In my

judgment, the Legislature's underlying purpose was to ensure that the public record associated with official action (such as the Commissioners' approval of the I&E/PPL settlement) transparently reflects the basis for the associated decision-making. *Accord PUC v. Seder*, 106 A.3d 193, 199 (Pa. Cmlwth. 2014) ("Section 335(d) is essentially an open docket provision solely concerned with providing access to the reasoning and bases for actions taken by the PUC, a goal which is accomplished through disclosure of the documents relied upon by the Commissioners and issuance of the opinion and order approving the settlement."). In this respect, I also agree with the PUC, PPL, and their *amicus* that the requirement attaches at the tier of the Commission at which relevant "official action" is taken.

Along these lines, I credit the Commonwealth Court's position that "commission" means "Commissioners" in scenarios, such as this one, where only the Commissioners are empowered to undertake the official action in question. *See id.* Accordingly, although Section 335(d) facially addresses the agency's "entry" into a settlement agreement, given the official-action overlay in Section 335(d), I do not believe that the General Assembly contemplated attachment of the disclosure requirement upon the mere administrative action entailed in the entry into a conditional settlement agreement.[1]

I recognize that the policy considerations regarding disclosure here are mixed. Nevertheless, at least under prevailing intermediate court precedent not subject to the present appeal, the anonymous tip letter and the I&E investigative file are the type of

---

[1] As the majority recognizes, Appellants' arguments resting upon the Public Utility Code's definition of "documents" as subsuming investigative information add little, since Section 336(d) requires disclosure only of documents "relied upon by the commission in reaching its determination." 66 Pa.C.S. §335(d). I find this qualifying language to be dispositive here, per my analysis above.

materials which are exempt from mandatory disclosure under the Right to Know Law ("RTKL") as records of a non-criminal investigation. From the terms of Section 335(d), I discern no intention on the part of the Legislature to override the policy underlying such an exclusion in the utility setting, other than in circumstances in which investigative materials would be included as a basis for "official action" on the Commission's part. 66 Pa.C.S. §335(d). Construction of the statute in this fashion allows public review of the basis for settlement approval decisions, and for the Commission to be subject to public scrutiny and criticism in instances in which records might not convey adequate or sound bases for decisions.[2] I do not believe, however, that the statute manifests an intention to open what otherwise would be confidential investigative files, outside the scope of the RTKL's mandatory disclosure requirements, where such materials simply were not relied upon by the tier of the Commission undertaking official action.

Again, I emphasize that the RTKL remains fully applicable to PUC records that are not subject to Section 335(d)'s requirement of disclosure, albeit the prevailing law in this case is that the particular materials in question are subject to an applicable RTKL exemption.

In summary, I respectfully dissent, as I would hold that Section 335(d) does not require that the anonymous tip letter and I&E investigative file be made part of the record of the approval of the I&E/PPL settlement agreement and released publicly.

Justice Dougherty joins this dissenting opinion.

---

[2] I make no suggestion that the present scenario represents such an instance, as such matter is outside the scope of the present review. I note only that, in two written opinions, the Commission put the matter out for public comment, notified the Office of Consumer Advocate and the Office of Small Business Advocate, and ultimately considered the ten factors to be evaluated in the settlement approval process per its regulations at Section 69.1201 of Title 52 of the Pennsylvania Code, 52 Pa. Code §69.1201. *See PUC v. PPL*, No. M-2013-2275471, *slip op.* (Pa. PUC Aug. 29, 2013); *PUC v. PPL*, No. M-2013-2275471, *slip op.* (Pa. PUC Oct. 31, 2013).