**[J-3A-2016 and J-3B-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**


| | | |
|---|---|---|
| PENNSYLVANIA PUBLIC UTILITY COMMISSION | : | No. 52 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated December |
| v. | : | 3, 2014 at No. 2132 C.D. 2013 |
| | : | reversing the Order of the Office of |
| | : | Open Records at No. AP 2013-1858 |
| ANDREW SEDER/THE TIMES LEADER | : | entered on November 4, 2013. |
| | : | |
| WNEP-TV, CHANNEL 16; TIMES | : | ARGUED:  November 18, 2015 |
| SHAMROCK; TIMES NEWS, LLC; THE | : | RESUBMITTED:  January 20, 2016 |
| ASSOCIATED PRESS; READING EAGLE | : | |
| COMPANY; PPL ELECTRIC UTILITIES | : | |
| CORPORATION; POCONO MOUNTAIN | : | |
| MEDIA GROUP; PHILADELPHIA MEDIA | : | |
| NETWORK, LLC, PA MEDIA GROUP; | : | |
| LANCASTER NEWSPAPER, INC.; | : | |
| CALKINS MEDIA INC., | : | |
| | : | |
| Intervenors | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ANDREW SEDER/THE | : | |
| TIMES LEADER; ASSOCIATED PRESS; | : | |
| CALKINS MEDIA INC.; LANCASTER | : | |
| NEWSPAPER INC.; PA MEDIA GROUP; | : | |
| PHILADELPHIA MEDIA NETWORK, LLC; | : | |
| POCONO MOUNTAINS MEDIA GROUP; | : | |
| READING EAGLE COMPANY; AND | : | |
| TIMES NEWS, LLC | : | |
| | | |
| PENNSYLVANIA PUBLIC UTILITY | : | No. 53 MAP 2015 |
| COMMISSION | : | Appeal from the Order of the |
| | : | Commonwealth Court dated December |
| | : | 3, 2014 at No. 2254 C.D. 2013 |
| v. | : | reversing the Order of the Office of |
| | : | |

| | |
|---|---|
| SCOTT KRAUS/THE MORNING CALL | : Open Records at No. AP 2013-1986<br>: entered on November 20, 2013.<br>: |
| WNEP-TV, CHANNEL 16; TIMES<br>SHAMROCK; TIMES NEWS, LLC; THE<br>ASSOCIATED PRESS; READING EAGLE<br>COMPANY; PPL ELECTRIC UTILITIES<br>CORPORATION; POCONO MOUNTAIN<br>MEDIA GROUP; PHILADELPHIA MEDIA<br>NETWORK, LLC, PA MEDIA GROUP;<br>LANCASTER NEWSPAPER, INC.;<br>CALKINS MEDIA INC., | :<br>: ARGUED: November 18, 2015<br>: RESUBMITTED: January 20, 2016<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Intervenors | :<br>:<br>:<br>:<br>:<br>: |
| APPEAL OF: SCOTT KRAUS/THE<br>MORNING CALL; ASSOCIATED PRESS;<br>CALKINS MEDIA INC.; LANCASTER<br>NEWSPAPER INC.; PA MEDIA GROUP;<br>PHILADELPHIA MEDIA NETWORK, LLC;<br>POCONO MOUNTAINS MEDIA GROUP;<br>READING EAGLE COMPANY; AND<br>TIMES NEWS, LLC | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## OPINION

**JUSTICE BAER**[1]                                                        **Decided: May 25, 2016**

This appeal presents the issue of whether Subsection 335(d) of the Public Utility

Code ("Code"), 66 Pa.C.S. § 335(d), requires the Public Utility Commission ("PUC") to

disclose a "tip letter" and an investigative file associated with a settlement agreement

entered into by PPL Electric Utilities Corporation ("PPL") and the PUC's Bureau of

Investigation and Enforcement ("I&E"), which was approved by the PUC's

Commissioners ("PUC Commissioners"). For the reasons that follow, we hold that

---

[1] This case was reassigned to this author.

Subsection 335(d) clearly and unambiguously obligates disclosure. We, therefore, respectfully reverse the Commonwealth Court's order, which held that disclosure was not required, and reinstate the final determinations of the Office of Open Records ("OOR").

The factual background underlying this matter is undisputed. On October 29, 2011, a snowstorm affected PPL's service area, causing over 388,000 PPL customers to experience disruption in their electrical service. In November of 2011, the PUC received an anonymous tip letter supposedly authored by a PPL employee. The tip letter alleged that PPL violated its priority-ranking policy when restoring power after the October 2011 snowstorm.

Soon thereafter, I&E conducted an informal investigation of PPL based upon the tip letter and concluded that PPL may have violated 66 Pa.C.S. §1501,[2] as well as PPL's internal policies regarding service restoration priority. The investigation resulted in PPL and the PUC, through I&E, entering into a settlement agreement, which the PUC Commissioners were required to consider for approval. Under the agreement, PPL did not admit to any wrong doing; however, it agreed to take corrective action to safeguard

---

[2] Section 1501 in part provides:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. . . .

66 Pa.C.S. § 1501.

against a similar incident occurring in the future. In addition, the parties agreed that PPL would pay a civil settlement fee of $60,000.

To facilitate the PUC Commissioners' consideration of the settlement agreement, I&E prosecuting attorney Michael Swindler made available to the PUC Commissioners a transmittal letter, the settlement agreement, and the parties' statements in support of the agreement. PUC's Motion to Submit Affidavit, 1/28/2014, Exhibit A (Affidavit of Michael Swindler). I&E did not turn over any other documents to the PUC Commissioners for their deliberations regarding the settlement agreement. Id. In addition, I&E and PPL agreed to treat the tip letter as a confidential document. Id.

In August of 2013, the PUC Commissioners held a public meeting regarding the settlement agreement and issued an order requesting public comments. The PUC received no comments, and the PUC Commissioners approved the settlement agreement in October of 2013. The settlement agreement and the parties' supporting statements were made public; however, the details regarding the tip letter and most of I&E's investigative material were not released to the public.

In the meantime, on August 28, 2013, Appellant Scott Kraus, a reporter for the Allentown-based newspaper The Morning Call, made a Right-to-Know-Law[3] ("RTKL") request asking the PUC to provide him with all documents related to the settlement, including the tip letter. Around the same time, Appellant Andrew Seder, a reporter for Wilkes-Barre newspaper The Times Leader, also requested the PUC to make available to him the tip letter. The PUC denied both requests.

In its denial letters, the PUC explained that it must provide "public records" pursuant to the RTKL. See 65 P.S. § 67.301(a) (stating that "[a] Commonwealth

---

[3] Act of Feb. 14, 2008, P.L. 6, No. 3 (as amended 65 P.S. §§ 67.101-67.3104).

agency shall provide public records in accordance with this act"). The RTKL defines "public record" as a "record, including, a financial record, of the Commonwealth or local agency that[, *inter alia*,] is not exempt from being disclosed under other Federal or State law[.]" 65 P.S. § 67.102. The PUC, espousing distinct rationales, has taken the general position that the sought-after records are exempt from disclosure under Subsection 335(d) of the Code, which is the focus of this appeal and provides:

> **(d) Release of documents.--**In addition to any other requirements imposed by law, including the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-to-Know Law, and the act of July 3, 1986 (P.L. 388, No. 84), known as the Sunshine Act, whenever the commission conducts an investigation of an act or practice of a public utility and makes a decision, enters into a settlement with a public utility or takes any other official action, as defined in the Sunshine Act, with respect to its investigation, it shall make part of the public record and release publicly any documents relied upon by the commission in reaching its determination, whether prepared by consultants or commission employees, other than documents protected by legal privilege; provided, however, that if a document contains trade secrets or proprietary information and it has been determined by the commission that harm to the person claiming the privilege would be substantial or if a document required to be released under this section contains identifying information which would operate to the prejudice or impairment of a person's reputation or personal security, or information that would lead to the disclosure of a confidential source or subject a person to potential economic retaliation as a result of their cooperation with a commission investigation, or information which, if disclosed to the public, could be used for criminal or terroristic purposes, the identifying information may be expurgated from the copy of the document made part of the public record. For the purposes of this section, "a document" means a report, memorandum or other document prepared for or used by the commission in the course of its investigation whether prepared by an adviser, consultant or other person who is not an employee of the commission or by an employee of the commission.

66 Pa.C.S. § 335(d) (footnotes omitted).

When the PUC first denied Appellants' requests, it based its decision on the portion of Subsection 335(d) which states that, if a document subject to public

disclosure contains information that would lead to the disclosure of a confidential source, would subject a person to potential economic retaliation, or would operate to impair a person's reputation, then "the identifying information may be expurgated from the copy of the document made part of the public record." 66 Pa.C.S. § 335(d). The PUC contended that the records sought by Appellants contain information that, in fact, would lead to the disclosure of a confidential source, would subject a person to potential economic retaliation, and would operate to impair a person's reputation.[4] In terms of redacting this information, the PUC asserted, "[D]ue to the form and brevity of the letter, redaction of the identifying information as to both the confidential source and the accused person is not practical." Letter of PUC Right-to-Know Officer Rosemary Chiavetta, dated October 4, 2013. Accordingly, the PUC took the position that, because redaction was not practical, the entire document was not subject to disclosure.

Appellants filed separate appeals with the OOR, where they argued, *inter alia*, that Subsection 335(d) actually obligates the PUC to disclose the tip letter and related investigative files. The PUC, however, reiterated that the sought-after records were exempt from disclosure under Subsection 335(d) for the same reasons that the PUC cited in its denial letters to Appellants. The OOR agreed with both Appellants and held that Subsection 335(d) requires the PUC to disclose redacted versions of the requested documents. Thus, in relevant part, the OOR's final determinations granted Appellants' appeals. The PUC appealed both cases to the Commonwealth Court. The

---

[4] In support of this contention, the PUC offered affidavits from Michael Swindler. As noted above, Michael Swindler is an I&E prosecuting attorney. His affidavits confirmed the PUC's contention.

Commonwealth Court consolidated the appeals and allowed several parties to intervene, including PPL.[5]

In the Commonwealth Court, the PUC and PPL renewed the PUC's contention that Subsection 335(d) does not require the disclosure of the sought-after documents. However, the focus of their argument shifted away from the redaction portion of the subsection and onto the definition of "commissioner" as that word is used in the context of the subsection. More specifically, the PUC and PPL argued that, when Subsection 335(d) utilizes the term "commission" in referring to the public release of "any documents relied upon by the commission in reaching its determination," "commission" means "the PUC Commissioners," not the PUC in its entirety, because only the PUC Commissioners can make determinations or otherwise take official action under the Sunshine Act.[6] PUC's Commonwealth Court Brief at 16. The PUC and PPL averred that the sought-after documents were not submitted to the PUC Commissioners during their consideration of the settlement agreement; thus, because the PUC Commissioners did not rely on the documents when they approved the settlement agreement, Subsection 335(d) does not require disclosure of those documents. See 66 Pa.C.S. § 335(d) (providing that "any documents relied upon by the commission" shall be made part of the public record and released publicly).

Appellants maintained before the Commonwealth Court that the plain language of Subsection 335(d) directs the PUC to disclose the pertinent documents. In support of their stance, Appellants argued that, as used in Subsection 335(d), "commission"

---

[5] The court also permitted the following parties to intervene: WNEP-TV, Channel 16; Times Shamrock; Times News, LLC; The Associated Press; Reading Eagle Company; Pocono Mountain Media Group; Philadelphia Media Network, LLC; PA Media Group; Lancaster Newspaper, Inc.; and Calkins Media, Inc.

[6] Act of Oct. 15, 1998, P.L. 729, No. 93, § 1 (as amended 65 Pa.C.S. §§ 701-716).

means the entire PUC, not just the PUC Commissioners. In this regard, Appellants highlighted that the Code defines "commission" as "[t]he Pennsylvania Public Utility Commission of this Commonwealth." 66 Pa.C.S. § 102.

The Commonwealth Court ultimately reversed the OOR's final determinations, crediting the contention of the PUC and PPL that the use of "commission" within Subsection 335(d) does not mean the entirety of the PUC, but rather, at times, is limited to the PUC Commissioners. Pennsylvania Pub. Util. Comm'n v. Seder, 106 A.3d 193 (Pa. Commw. 2014). In reaching its decision, the Commonwealth Court opined that, pursuant to Subsection 335(d), the PUC must disclose documents relating to an investigation if the following two prerequisites are met: "(1) the commission has made a decision, entered into a settlement with a public utility or taken any other official action under the Sunshine Act and (2) the commission relied upon the documents in making its determination." Id. at 198. The Commonwealth Court identified that the key question before the court was who constitutes the "commission" in the context of these sentences of Subsection 335(d). Id. at 198-99.

The Commonwealth Court then held that the use of "commission" in the portion of Subsection 335(d) that mentions "documents relied upon in reaching its determination" refers to the PUC Commissioners, not the entire PUC as argued by Appellants. The court concluded that this result is dictated by the fact that only the PUC Commissioners have the authority, by majority vote, to make a decision, enter into a settlement, and take official action. Id. at 199. In support of this conclusion, the court cited Subsection 301(d) of the Code, 66 Pa.C.S. § 301(d). This statutory subsection provides, in relevant part, that "[a] majority of the members of the commission . . . shall constitute a quorum and such majority, acting unanimously, shall be required for any

action, including the making of any order or the ratification of any act done or order made by one or more of the commissioners." 66 Pa.C.S. § 301(d).

The Commonwealth Court further observed that Subsection 335(d) defines "document" as "a report, memorandum or other document prepared for or used by the commission in the course of its investigation." 66 Pa.C.S. § 335(d). As to the use of "commission" in this instance, the court asserted that "commission" can mean either the PUC Commissioners or PUC staff. According to the court, documents prepared by PUC staff nonetheless are disclosable only if the PUC Commissioners relied upon them in their decision-making process.

In applying its holding regarding the definition of "commission" to the facts of this case, the Commonwealth Court explained that the first perquisite triggering disclosure pursuant to Subsection 335(d) was satisfied when the PUC Commissioners approved the settlement agreement. However, the court determined that the second prerequisite for disclosure was not fulfilled because the PUC Commissioners did not have access to or rely upon the requested documents when they approved the settlement agreement. The court supported this determination by citing to Michael Swindler's affidavits.[7] After finding that Subsection 335(d) does not require the disclosure of the requested documents, the Commonwealth Court concluded that the RTKL also does not mandate the disclosure of the pertinent documents.[8]

---

[7] Prior to issuing its opinion, the Commonwealth Court allowed the PUC to supplement the record with additional affidavits from Michael Swindler, which confirmed that the PUC Commissioners did not rely on the requested documents.

[8] In its denial letters to Appellants and in its appeals to the OOR and the Commonwealth Court, the PUC also maintained that the sought-after records were exempt from disclosure pursuant to various provisions of the RTKL. Because the OOR determined that Subsection 335(d) required disclosure of these records, it did not address the PUC's arguments regarding the RTKL.

Appellants petitioned this Court for allowance of appeal. We granted the petition, primarily to review the propriety of the Commonwealth Court's interpretation of Subsection 335(d). The parties do not dispute that the records which Appellants requested qualify as "documents" for purposes of Subsection 335(d). See 66 Pa.C.S. § 335(d) (defining "a document" as "a report, memorandum or other document prepared for or used by the commission in the course of its investigation whether prepared by an adviser, consultant or other person who is not an employee of the commission or by an employee of the commission"); see also PPL's Brief at 31 ("Thus, all PUC documents prepared by or for the Commissioners or PUC staff are considered 'documents' for purposes of [Subsection 335(d)]."). Instead, the primary dispute in this appeal is what the General Assembly intended when it utilized "commission" within the context Subsection 335(d).

Appellants take the position that "commission," as used in Subsection 335(d), means the entire PUC. As they did in the Commonwealth Court, Appellants support their position by relying on the Code's definition of "commission" as meaning "[t]he Pennsylvania Public Utility Commission of this Commonwealth." 66 Pa.C.S. § 102. Appellants insist that, when "commission" is assigned its proper meaning, Subsection 335(d) clearly and unambiguously requires the PUC to disclose publicly the tip letter and related investigative materials because the whole of the PUC relied upon those documents in reaching its determination to enter into the settlement agreement with PPL.

Appellants bolster their argument by citing to Subsection 335(d)'s introductory clause, which states that the mandates of Subsection 335(d) are in addition to any other requirements imposed by law, including the RTKL and the Sunshine Act. 66 Pa.C.S. § 335(d). In contrast to Subsection 335(d), the RTKL exempts from disclosure

investigative files. 65 P.S. §§ 67.708(b)(10)(i)(A) and (b)(17). Thus, in Appellants' view, the General Assembly included this introductory clause in Subsection 335(d) to make clear that the subsection provides broader access to PUC documents, such as the investigative files sought by Appellants, than is required by the RTKL and the Sunshine Act.

In light of Appellants' opinion of the General Assembly's intent in enacting Subsection 335(d), they characterize as irrelevant the fact that the PUC and PPL agreed to keep the tip letter confidential. Indeed, Appellants and their *amici*[9] maintain that Subsection 335(d) achieves the policy aim of making dealings between the PUC and public utilities transparent.

The PUC and PPL believe that, for purposes of Subsection 335(d), public disclosure of PUC investigative materials is mandatory only when the PUC Commissioners rely upon those materials in taking official action pursuant to the Sunshine Act, such as when they approved the settlement agreement in this case. In this regard, the PUC and PPL renew the argument that they made in the Commonwealth Court. They take the position that, when Subsection 335(d) refers to "any documents relied upon by the commission in reaching its determination," "commission" must mean "the PUC Commissioners" because, pursuant to the Sunshine Act, only the PUC Commissioners are authorized to take "official action" and to make "determinations" to approve or disapprove proposed settlement agreements in public meetings. PUC's Brief at 7 (citing 66 Pa.C.S. § 301(d)).

The PUC and PPL contend that, when Subsection 335(d) is interpreted in this manner, it becomes clear that the PUC is not required to disclose the sought-after

---

[9] The Pennsylvania NewsMedia Association and The Reporters Committee for Freedom of Press jointly filed a brief in support of Appellants.

records because the PUC Commissioners did not rely upon them in their decision-making process. Rather, in taking their official action by approving the settlement agreement, the PUC Commissioners solely relied upon the settlement agreement and the parties' supporting statements, all of which are available to the public.

The PUC and PPL cite as support for their argument the regulations which govern the PUC's resolution of informal investigations. In particular, the PUC and PPL highlight that Subsection 3.113(b) of Title 52 of the Pennsylvania Code, 52 Pa.Code § 3.113, distinguishes between permissible actions for PUC staff and official actions taken by the PUC Commissioners at a public meeting. For example, Subsection 3.113(a) grants "Commission staff" the discretion to conduct informal investigations "in appropriate circumstances regarding the condition and management of a public utility or other person subject to its jurisdiction." 52 Pa.Code § 3.113(a). Subsection 3.113(b)(3), on the other hand, dictates what official actions, per the Sunshine Act, must be taken when resolving informal investigations, such as "the Commission" considering a settlement at a public meeting. 52 Pa.Code § 3.113(b)(3). The PUC and PPL point out that only the PUC Commissioners consider settlement agreements at public meetings. The PUC and PPL aver that, under this regulation, only documents relied upon by the PUC Commissioners in their official agency actions, such as approving a settlement agreement at a public meeting, are subject to disclosure. See 52 Pa.Code § 3.113(b)(3) (providing that "[e]xcept for staff reports and other documents covered by a specific legal privilege, documents relied upon by the Commission in reaching its determination shall be made part of the public record").

Regarding public policy, the PUC, PPL, and their *amicus*[10] contend that their interpretation of Subsection 335(d) aligns with the RTKL's noncriminal-investigation

---

[10] The Energy Association of Pennsylvania filed a brief in support of the PUC and PPL.

exemption to disclosure of public records. This provision of the RTKL exempts from access otherwise disclosable agency records which relate to non-criminal investigations. 65 Pa.C.S. § 67.708(b)(17). The provision specifically precludes access to agencies' "investigative materials" concerning non-criminal investigations. 65 Pa.C.S. § 67.708(b)(17)(ii). The PUC and PPL also believe that their interpretation of the subsection allows for sufficient transparency of the PUC's dealings with public utilities without substantially interfering with public utilities' willingness to cooperate with PUC investigations and to enter into settlement agreements. After applying the appropriate statutory analysis, we agree with Appellants' interpretation of Subsection 335(d).

Issues of statutory interpretation present this Court with questions of law; accordingly, our standard of review is *de novo*, and our scope of review is plenary. Shafer Elec. & Const. v. Mantia, 96 A.3d 989, 994 (Pa. 2014). The interpretation of Subsection 335(d) is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Furthermore, "if the General Assembly defines words that are used in a statute, those definitions are binding." Pennsylvania Associated Builders & Contractors, Inc. v. Commonwealth Dep't of Gen. Servs., 932 A.2d 1271, 1278 (Pa. 2007).

As Appellants highlight, the General Assembly defined "Commission" as "[t]he Pennsylvania Public Utility Commission of this Commonwealth" and did not limit that term to encompass only the PUC Commissioners. 66 Pa.C.S. § 102. We are bound by that definition in construing Subsection 335(d). Moreover, interpreting "Commission" to

mean "the PUC" in its entirety harmonizes the statutory subsection because reference to "the PUC" necessarily includes both I&E and the PUC Commissioners, which the context of the subsection as a whole requires.

The General Assembly specified that the public release of documents under Subsection 335(d) is necessary when "the commission" relies upon them "in reaching its determination." 66 Pa.C.S. § 335(d). Subsection 335(d) likewise contemplates that, in reaching its determination, the "commission" will conduct an investigation and will, *inter alia*, take official action. I&E conducts investigations, and the PUC Commissioners take official action. Id. Consequently, in order for Subsection 335(d)'s use of "commission" to include the various tasks that only specific divisions of the PUC can undertake, as well as decisions which only the PUC Commissioners can make, "commission" must mean the entirety of "the PUC."

We further observe that adoption of the Commonwealth Court's interpretation of Subsection 335(d) leads to an unreasonable result. Specifically, the first sentence of Subsection 335(d) states, in part, "[W]henever *the commission conducts an investigation* of an act or practice of a public utility *and…takes any other official action*…with respect to its investigation, it shall make part of the public record and release publicly any documents relied upon by the *commission* in reaching its determination[.]" 66 Pa.C.S. § 335(d) (emphasis added).

Because I&E is the only division of the PUC that conducts investigations and the PUC Commissioners exclusively take official action, the Commonwealth Court's interpretation of Subsection 335(d) would require the use of the word "commission" to mean simultaneously and variously "I&E" and "PUC Commissioners." We refuse to read such an inconsistency into the statutory provision. Indeed, such an interpretation is unreasonable, and we must presume that the General Assembly, in enacting

Subsection 335(d), did not intend an unreasonable result. See 1 Pa.C.S. § 1922(1) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used . . . [t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.").

On the other hand, applying the definition of "commission" as adopted and defined by the General Assembly in Section 102 of the Code to mean the entirety of the PUC, the subsection makes complete sense. In this regard, Subsection 335(d) provides that, whenever the PUC conducts an investigation of a public utility's act and enters into a settlement with the public utility, the PUC shall make part of the public record and release publicly any documents relied upon by the PUC in reaching its determination, which includes both the investigation and the eventual action. 66 Pa.C.S. § 335(d). The statutory language makes clear that "a document" means, *inter alia*, any document used by the PUC in the course of its investigation, regardless of who prepared the document. Id.

Here, there is no dispute that the PUC "conduct[ed] an investigation of an act" of PPL and that the PUC "enter[ed] into a settlement with" PPL, as required by Subsection 335(d). Moreover, a review of the record, including the PUC's filings, leaves no question that the tip letter constituted a document, as the PUC's I&E utilized the letter in the course of its investigation. See, e.g., PUC's Petition for Review, 12/3/2013, at ¶ 13 ("The PUC's [I&E] then initiated an investigation … and investigated the allegations of the tip letter."). Additionally, I&E's investigative file by its very nature demonstrates that it consists of documents that the PUC used in the course of its investigation. See also PUC's Motion to Submit Affidavit, 1/28/2014, Exhibit A (Affidavit of Michael Swindler) ("As I&E's prosecuting attorney, I am familiar with the whistleblower letter and the other

requested materials, including their relationship to I&E's subsequent investigation. During the investigation, I prepared documents solely for use in the investigation. . . .").

Thus, the remaining question is whether the documents were "relied upon by the [PUC] in reaching its determination" to settle with PPL for purposes of Subsection 335(d). It is indisputable at this juncture that the PUC relied upon the sought-after documents when making its determination to enter the settlement agreement with PPL, which included both I&E's investigation and the PUC Commissioners' official action. Indeed, in the responses it filed in the OOR, the PUC essentially conceded that it relied upon the documents in reaching its decision to enter into the settlement agreement. See Kraus v. PUC, Docket No. AP 2013-1986, Response of the PUC, dated October 31, 2013, at ¶6 ("Section 335(d) of the Public Utility Code provides for disclosure of documents relied upon by the PUC in its actions; however it provides a specific exemption from disclosure for the identifying information contained in the Tip Letter and some of the other documents associated with the Commission investigation.").

We conclude that the clear and unambiguous language of Subsection 335(d) demonstrates that the General Assembly intended the PUC to make part of the public record and release publicly the documents sought by Appellants. This interpretation of the statute is consistent with the overall intent of the Legislature in enacting Subsection 335(d). More specifically, Subsection 335(d) is a public disclosure law that evinces the General Assembly's desire to effectuate transparency, above and beyond that which is required by the RTKL, in the government's dealings with public utilities.

In this regard, we observe that the object of the RTKL is to empower the citizens of this Commonwealth with access to information concerning government activities. SWB Yankees LLC v. Wintermantel, 45 A.3d 1029, 1042 (Pa. 2012). Yet, as mentioned above, the RTKL exempts from disclosure investigative files related to agencies' non-

criminal investigations. 65 P.S. §§ 67.708(b)(10)(i)(A) and (b)(17). By providing that the disclosure mandates of Subsection 335(d) supplement the access to records provided by the RTKL,[11] the General Assembly signaled that transparency is of particular importance in the context of the PUC's governing relationship with public utilities. Governmental transparency is of paramount significance when the PUC enters into settlement agreements with public utilities, as such agreements are negotiated behind doors closed to the public. The disclosure requirements of Subsection 335(d) allow the public to view that which informs the PUC's decisions to enter into settlement agreements with public utilities.

Lastly, in this subsection, the Legislature wisely allows for expurgation from a publicly disclosed document, *inter alia*, "information that would lead to the disclosure of a confidential source or subject a person to potential economic retaliation as a result of their cooperation with a commission investigation[.]" 66 Pa.C.S. § 335(d). Thus, in this case, the OOR acted appropriately by allowing for permissible redaction of the documents which it directed the PUC to disclose.

For these reasons, we reverse the Commonwealth Court's order and reinstate the final determinations of the OOR.

Justices Todd, Donohue and Wecht join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justice Dougherty joins.

---

[11] See 66 Pa.C.S. § 335(d) ("In addition to any other requirements imposed by law, including the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-to-Know Law, and the act of July 3, 1986 (P.L. 388, No. 84), known as the Sunshine Act, whenever the commission conducts an investigation of an act or practice of a public utility and makes a decision, enters into a settlement with a public utility or takes any other official action, as defined in the Sunshine Act, with respect to its investigation, it shall make part of the public record and release publicly any documents relied upon by the commission in reaching its determination[.]").