IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Energy Transfer,
           Petitioner

          v.

Rebecca Moss and Spotlight PA,
           Respondents

Pennsylvania Public Utility
Commission,
           Petitioner

          v.

Rebecca Moss and Spotlight PA,
           Respondents

:   **CASES CONSOLIDATED**
:
:
:   No. 1700 C.D. 2019
:   Submitted: July 15, 2022
:
:
:
:
:
:
:
:   No. 1722 C.D. 2019
:
:
:

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED: January 20, 2023

      Energy Transfer and the Pennsylvania Public Utility Commission (Commission) have separately petitioned for this Court's review of the final determination of the Office of Open Records (OOR) directing the Commission to provide records requested by Rebecca Moss and Spotlight PA (collectively, Requesters)[1] under the Right-to-Know Law.[2] Requesters sought email communications between certain Commission staff and Energy Transfer. The Commission denied the request for the stated reason, *inter alia*, that the records were protected from disclosure under the Public Utility Confidential Security Information

---

[1] Our Court consolidated the above-captioned cases in an order dated January 10, 2020.

[2] Act of February 17, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

Disclosure Protection Act (CSI Act)[3] or were exempt under the Right-to-Know Law as related to a noncriminal investigation. The OOR sustained Requesters' appeal but permitted the Commission to redact any information that could be used for criminal or terroristic purposes. After review of the OOR's final determination, we reverse.

## Background

On August 23, 2019, Requesters submitted a Right-to-Know request to the Commission that stated as follows:

> *Please provide all emails, including attachments, sent or received by staff* of the Public Utility Commission, including but not limited to Paul Metro, Seth Mendelsohn, Richard Kanaskie, Kasha Schreffler, Cathy Royer, Anthony Bianco, including correspondence with Energy Transfer Partners and Sunoco, including but not limited to Albert Kravatz, between Nov. 1, 2017 and the date this request is processed *that relate to pipeline projects, including Mariner East 1, 2, and 2X pipeline project*, and specifically mention terms including but not limited to "real time modeling", and/or "evacuation zone(s)", and/or "safety risks", and/or "buffer zone(s)", and/or "emergency response plan(s)", and/or "accident", and/or "accident plan".

Reproduced Record at 6a (R.R. __) (emphasis added). The Commission denied the request as insufficiently specific. Nevertheless, the Commission did a search of its records and determined that, except for Paul Metro, none of the named Commission staff had engaged in email communication with Albert Kravatz. With respect to the emails sent to or received by Paul Metro, the Commission asserted those emails contained confidential security information or were related to a noncriminal investigation. Therefore, the records were exempt from disclosure under the CSI

---

[3] Act of November 29, 2006, P.L. 1435, 35 P.S. §§2141.1-2141.6.

2

Act or the Right-to-Know Law. Requesters appealed the Commission's decision to the OOR.

Before the OOR, the Commission submitted a position statement reciting the above-stated grounds for its denial of the email communications sought by Requesters. In support, the Commission submitted several affidavits. Richard A. Kanaskie, the Commission's Director of the Bureau of Investigation and Enforcement (Bureau of Enforcement), attested that the requested records, save two, had been designated confidential security information within the meaning of the CSI Act. Accordingly, their disclosure

> would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity[; . . .] would create a reasonable likelihood of endangering the safety and physical security of a public utility[ because t]hese records include infrastructure records that expose or create vulnerability through disclosure of location, configuration, or security of public utility systems, that is pipeline systems[; and, . . .] would jeopardize or threaten public safety or preparedness or public protection activity, and create a reasonable likelihood of endangering the safety and security of a public utility in consultation with technical Gas Safety staff at the Commission, which agree with my professional assessment.

R.R. 41a. Kanaskie also attested that, on or about April 17, 2017, the Bureau of Enforcement began an investigation into one of Energy Transfer's pipelines, which investigation was still ongoing, and it has other pending investigations of Energy Transfer's pipelines.

Energy Transfer, which participated in the OOR proceeding, also submitted a position statement. It agreed with the Commission's position and further argued that the records at issue contained confidential proprietary information and/or trade secrets and, thus, were exempt from disclosure under the Right-to-Know Law.

3

Energy Transfer submitted the sworn declaration of Todd Nardozzi, Senior Manager, attesting that, since April 1, 2017, Energy Transfer has submitted technical reports, locational drawings, and operational reports to the Commission, which contain information on the operation, location, and vulnerabilities of its pipelines. Nardozzi also attested that Energy Transfer has treated this information as confidential security information in accordance with the requirements of the CSI Act. Finally, Nardozzi attested that since April 1, 2017, several of Energy Transfer's pipelines have been the subject of ongoing, noncriminal investigations by the Commission.

In their response, Requesters argued that their Right-to-Know request was sufficiently specific, because it provided both dates and names. They also argued that the records were not exempt because any confidential information could be redacted. Finally, they argued the Commission's claim that the records were part of a noncriminal investigation was overbroad and, thus, did not authorize an exemption on that basis.

In its final determination, the OOR agreed that the request was sufficiently specific because it was limited to a discrete group of documents, identified email senders or recipients, and provided a keyword list to limit the search. The OOR also agreed that the requested records were not exempt as confidential security information. The OOR reasoned that for a record to be exempt as confidential security information, the public utility must comply with the procedures for "protecting confidential security information," as set forth in Section 3 of the CSI Act, 35 P.S. §2141.3.[4] OOR Final Determination at 11; R.R. 90a. Notably, the

---

[4] It states, in pertinent part:

    (a) General rule.--The public utility is responsible for determining whether a record or portion thereof contains confidential security information. When a public utility

4

Commission's regulation does not authorize the electronic communication of confidential security information.  52 Pa. Code §102.3(b)(1), (3).[5]  Because Requesters sought emails and attachments, the requested electronic records were not entitled to protection under the CSI Act.

The OOR found that the affidavits of Kanaskie and Rosemary Chiavetta, Secretary of the Commission, attested to ongoing investigations to which the requested records pertained.  However, this did not end the inquiry.  Section 335(d) of the Public Utility Code states, in pertinent part, as follows:

> whenever the commission conducts an investigation of an act or practice of a public utility and makes a decision, enters into a settlement with a public utility or takes any other official action,

---

identifies a record as containing confidential security information, it must clearly state in its transmittal letter, upon submission to an agency, that the record contains confidential security information and explain why the information should be treated as such.

(b) Submission of confidential security information.--An agency shall develop filing protocols and procedures for public utilities to follow when submitting records, including protocols and procedures for submitting records containing confidential security information.

35 P.S. §2141.3(a)-(b).

[5] It states:

(b) *Filing requirements.* When a public utility is required to submit a record that contains confidential security information to the Commission, the public utility shall do the following:

> (1) Clearly state in its transmittal letter to the Commission that the record contains confidential security information and explain why the information should be treated as confidential.  The transmittal letter will be treated as a public record and may not contain any confidential security information.
>
> * * * *
>
> (3) Stamp or label each page of the record containing confidential security information with the words "Confidential Security Information" and place all pages labeled as containing confidential security information in a separate envelope marked "Confidential Security Information."

52 Pa. Code §102.3(b)(1), (3).

as defined in the Sunshine Act,[6] with respect to its investigation, *it shall make part of the public record and release publicly any documents relied upon by the commission in reaching its determination*, whether prepared by consultants or commission employees, other than documents protected by legal privilege[.]

66 Pa. C.S. §335(d) (emphasis added). The OOR held that the Bureau of Enforcement's filing of a formal complaint against Energy Transfer constituted a "decision," which triggered a disclosure obligation under Section 335(d) of the Public Utility Code. Nevertheless, the OOR authorized the Commission to redact information that, "if disclosed to the public, could be used for criminal or terroristic purposes[.]" OOR Final Determination at 17-18; R.R. 96a-97a.

The Commission and Energy Transfer each filed a petition for this Court's review of the OOR's final determination. The appeals were consolidated by order of this Court.

On appeal,[7] the Commission and Energy Transfer raise two issues. First, they argue that any challenge to a public utility's designation of a record as containing confidential security information must be presented to the Commission. Once records have been so designated by a public utility, they are exempt under the Right-to-Know Law. Second, they argue that the OOR erred in concluding that the filing of a complaint by the Commission's Bureau of Enforcement constituted a decision or official action of the Commission that required the release of investigative documents under Section 335(d) of the Public Utility Code.[8]

---

[6] 65 Pa. C.S. §§701-716.

[7] This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

[8] Requesters failed to file a brief pursuant to this Court's order of July 22, 2021. Accordingly, on September 14, 2021, this Court entered an order precluding Requesters from filing briefs and participating in oral argument, if scheduled. Court Order, 9/14/2021, at 1. The parties have not

6

## Analysis

We begin with a review of the applicable principles of law. Under the Right-to-Know Law, records in the possession of a government agency are presumed to be public unless exempt from disclosure under Section 708 of the Right-to-Know Law, 65 P.S. §67.708; protected by privilege; or exempt from disclosure under other law or court order. Section 305 of the Right-to-Know Law, 65 P.S. §67.305. Exemptions from disclosure are to be narrowly construed. *Carey v. Department of Corrections*, 61 A.3d 367, 373 (Pa. Cmwlth. 2013). Further, the government agency bears the burden of proving a record is exempt from disclosure. *Id.* at 372.

With regard to an agency's noncriminal investigation, Section 708(b)(17) of the Right-to-Know Law states, in relevant part, as follows:

> (b) Exceptions.--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> * * * *
>
> (17) A record of an agency relating to a noncriminal investigation, including:
>
>> (i) Complaints submitted to an agency.
>>
>> (ii) Investigative materials, notes, correspondence and reports.
>>
>> * * * *
>>
>> (iv) A record that includes information made confidential by law.
>>
>> * * * *
>>
>> (vi) A record that, if disclosed, would do any of the following:

appealed the OOR's final determination that the request was sufficiently specific, contrary to the Commission's claim.

7

(A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.

(B) Deprive a person of the right to an impartial adjudication.

(C) Constitute an unwarranted invasion of privacy.

(D) Hinder an agency's ability to secure an administrative or civil sanction.

(E) Endanger the life or physical safety of an individual.

65 P.S. §67.708(b)(17)(i-ii), (iv), (vi). Nothing in the Right-to-Know Law supersedes or modifies the "nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." Section 306 of the Right-to-Know Law, 65 P.S. §67.306. *See also* Section 102 of the Right-to-Know Law, 65 P.S. §67.102 (a public record does not include those records exempt from disclosure under any other Federal or State law or regulation or judicial order or decree).

With these principles in mind, we turn to the issues on appeal.

## I. CSI Act

The Commission and Energy Transfer argue that the OOR exceeded its statutory authority in holding that the requested records did not constitute confidential security information because they were submitted electronically to the Commission. They argue that Requesters had to present this claim to the

8

Commission for a decision. The OOR lacked any authority to adjudicate the applicability of the CSI Act to records so designated by a utility.

The CSI Act protects confidential security information that a public utility provides to state agencies, such as the Commission. Confidential security information is defined as "[i]nformation contained within a record maintained by an agency in any form, the disclosure of which would compromise security against sabotage or criminal or terrorist acts and the nondisclosure of which is necessary for the protection of life, safety, public property or public utility facilities[.]" Section 2 of the CSI Act, 35 P.S. §2141.2. It is the public utility that determines "whether a record or portion thereof contains confidential security information" and so identifies the record when submitting it to a state agency. Section 3(a) of the CSI Act, 35 P.S. §2141.3(a).

Nevertheless, the agency that receives information designated as confidential may set aside that designation. Section 3(b)-(c) of the CSI Act states, in relevant part, as follows:

> (b) Submission of confidential security information.--An agency shall develop filing protocols and procedures for public utilities to follow when submitting records, including protocols and procedures for submitting records containing confidential security information. Such protocols and procedures shall instruct public utilities who submit records to an agency to separate their information into at least two categories:
>
> > (1) Public.--Records or portions thereof subject to the provisions of the act of June 21, 1957 (P.L. 390, No. 212),[9] referred to as the Right-to-Know Law.
> >
> > (2) Confidential.--Records or portions thereof requested to be treated as containing confidential security information and not subject to the Right-to-Know Law.

---

[9] *Formerly* 65 P.S. §§66.1-66.9, repealed by the Right-to-Know Law.

9

(c) Challenges to designation of confidential security information.--Challenges to a public utility's designation or request to examine records containing confidential security information by a member of the public shall be made in writing to the agency in which the record or portions thereof were originally submitted. The agency shall develop protocols and procedures to address challenges to the designations or requests to examine records containing confidential security information. Such protocols and procedures shall include:

(1) Written notification to the public utility by the agency of the request to examine records containing confidential security information or challenge of its designation.

(2) An opportunity for agency review of the public utility's designation.

(3) During the review or any appeal of the agency's decision, the agency shall continue to honor the confidential security information designation by the public utility.

(4) Agency review of the public utility's designation or request to examine records containing confidential security information shall be based on consistency with the definition of confidential security information contained in this act or when there are reasonable grounds to believe disclosure may result in a safety risk, including the risk of harm to any person, or mass destruction.

35 P.S. §2141.3(b), (c)(1)-(4).

Recently, the Pennsylvania Supreme Court considered the scope of the OOR's authority where the CSI Act is implicated in a record request. In *Energy Transfer v. Friedman*, 265 A.3d 421 (Pa. 2021), the requester sought records relating to the buffer zones for gas pipelines. The Commission did not grant the request because the records had been designated as containing confidential security information by the utility. Concluding that the responsive records were not entitled to be designated confidential security information, the OOR ordered their disclosure.

This Court reversed, holding that administration of the CSI Act rested with the Commission, the state agency that had received those records, and not with the OOR. *Pennsylvania Public Utility Commission v. Friedman*, 244 A.3d 515 (Pa. Cmwlth. 2020). On further appeal, the Supreme Court affirmed.

The CSI Act makes "the agency in which the record or portions thereof were originally submitted" responsible to establish "protocols and procedures" for the handling of confidential security information, including "challenges" to the designation of a filing as containing confidential security information. Section 3(c) of the CSI Act, 35 P.S. §2141.3(c). Section 4 of the CSI Act further states:

> Public utility records or portions thereof which contain confidential security information, in accordance with the provisions of this act, shall not be subject to the provisions of the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-to-Know Law.

35 P.S. §2141.4. The Supreme Court concluded that the Commission had exclusive jurisdiction to determine whether the utility's designation of confidential security information was valid and in compliance with its regulations. *Friedman*, 265 A.3d at 423.

The Supreme Court reasoned that the General Assembly intended the Right-to-Know Law to yield to the CSI Act with respect to access to confidential security information. A record containing confidential security information is not a "public record" under Section 102 of the Right-to-Know Law, 65 P.S. §67.102. The CSI Act sets forth exclusive procedures for challenging a public utility designation of confidential security information and requests for confidential security information records. *Friedman*, 265 A.3d at 432. Stated otherwise, the OOR lacked authority to reverse the Commission's application of the CSI Act with respect to the designation of confidential security information.

11

Here, the records sought by Requesters, save two, have been designated by Energy Transfer as containing confidential security information. As such, they are excluded from the definition of public records in the Right-to-Know Law. Section 102 of the Right-to-Know Law, 65 P.S. §67.102; *Friedman*, 265 A.3d at 431. The OOR lacked authority to rule on the Commission's application of the CSI Act and the regulation at 52 Pa. Code §102.3(b) to the requested records. To challenge Energy Transfer's alleged lack of compliance with the CSI Act, Requesters must present their claim to the Commission. Until the Commission takes action to set aside Energy Transfer's designation of confidential security information, the designation must stand. Accordingly, we reverse the OOR's final determination because the records sought by Requesters were exempt under the CSI Act.

## II. Section 335(d) of the Public Utility Code

Regarding the two records not designated as confidential security information, the Commission and Energy Transfer argue that the OOR erred in determining the filing of a formal complaint, before any action thereon, required disclosure of investigation materials under Section 335(d) of the Public Utility Code. They argue that there is no evidence that the Commission has taken formal action with respect to the ongoing investigation.

Section 335(d) of the Public Utility Code states, in pertinent part, as follows:

> In addition to any other requirements imposed by law, including the act of June 21, 1957 (P.L. 390, No. 212), referred to as the Right-to-Know Law, and the act of July 3, 1986 (P.L. 388, No. 84), known as the Sunshine Act, *whenever the commission conducts an investigation of an act or practice of a public utility and makes a decision, enters into a settlement with a public utility or takes any other official action, as defined in the*

12

*Sunshine Act, with respect to its investigation*, it shall make part of the public record and release publicly any documents relied upon by the commission in reaching its determination, whether prepared by consultants or commission employees, other than documents protected by legal privilege; provided, however, that if a document contains trade secrets or proprietary information and it has been determined by the commission that harm to the person claiming the privilege would be substantial or if a document required to be released under this section contains identifying information which would operate to the prejudice or impairment of a person's reputation or personal security, or information that would lead to the disclosure of a confidential source or subject a person to potential economic retaliation as a result of their cooperation with a commission investigation, or information which, if disclosed to the public, could be used for criminal or terroristic purposes, the identifying information may be expurgated from the copy of the document made part of the public record.

66 Pa. C.S. §335(d) (emphasis added). This provision creates a two-part test to determine whether a record must be disclosed. First, there must be an investigation by the Commission. Second, the Commission must make a "decision," enter into a "settlement" with a public utility, or take "any other official action, as defined in the Sunshine Act, with respect to that investigation." *Id*. "Official action" is defined as: "(1) Recommendations made by an agency pursuant to statute, ordinance or executive order[;] (2) The establishment of policy by an agency[;] (3) The decisions on agency business made by an agency[; or] (4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order." 65 Pa. C.S. §703.

Here, the OOR concluded that the public disclosure requirement in Section 335(d) was triggered by the Commission's Bureau of Enforcement's "decision" to file a formal complaint against Energy Transfer with the Commission. In reaching this conclusion, the OOR relied upon this Court's decision in

13

*Pennsylvania Public Utility Commission v. Gilbert*, 40 A.3d 755 (Pa. Cmwlth. 2012), and the Supreme Court's in *Pennsylvania Public Utility Commission v. Seder*, 139 A.3d 165 (Pa. 2016). However, *Gilbert* and *Seder* are distinguishable.

In *Gilbert*, a reporter requested records related to underground natural gas pipelines; all enforcement action taken by the Commission; safety records; and pipeline incident reports. This Court held that the requested records were generated as part of a "noncriminal investigation" and, thus, exempt from disclosure. In holding that Section 335(d) of the Public Utility Code did not apply, we explained that "[i]t is not until after the [Commission's] investigative materials are presented as part of a formal complaint, presented at a formal hearing, or presented as part of a settlement agreement that the materials are public." *Gilbert*, 40 A.3d at 760. Notably, here, Requesters do not assert that the records they seek were part of, or attached to, the Bureau of Enforcement's complaint.

In *Seder*, the requesters sought, *inter alia*, the investigative file associated with a settlement agreement between an electric utility and the Bureau of Enforcement that was approved by the Commission. Noting that the Commission conceded that it relied upon the requested documents in reaching its decision to approve and become a party to the settlement agreement, the Supreme Court concluded that Section 335(d) did apply. It reasoned that Section 335(d) supplements the Right-to-Know Law and held that the Commission was required to disclose the requested records, subject to the redaction of confidential source or information that could subject a person to potential retaliation as a result of her cooperation with a Commission investigation. Here, there has been no settlement of the Bureau of Enforcement's complaint against Energy Transfer.

14

The mere filing of a complaint by the Bureau of Enforcement does not constitute a "decision" within the meaning of Section 335(d) of the Public Utility Code because it is not final. At best, it is an inchoate decision because the Bureau can withdraw or amend its complaint. Section 335(d) requires a decision, settlement, or other official action, as defined in the Sunshine Act, before documents may be made available to the public. Stated otherwise, there must be a formal resolution to the complaint by the Commission, whether by settlement, consent decree or by adjudication after a full hearing on the merits, before the disclosure requirement in Section 335(d) of the Public Utility Code is triggered.

Here, there is no evidence of a decision, a settlement, or any official action with respect to the Bureau of Enforcement's investigation of the complaint against Energy Transfer. To the contrary, the affidavits submitted by the Commission describe the investigations as ongoing. *See* Affidavit of Chiavetta ¶¶7-8; R.R. 39a (Bureau's investigations are active and ongoing); Affidavit of Kanaskie ¶¶3-4; R.R. 40a-41a (Bureau's investigations are active and ongoing). Accordingly, the disclosure requirements in Section 335(d) do not apply, and the OOR erred in directing the Commission to release the requested records pursuant to Section 335(d) of the Public Utility Code.

## Conclusion

We hold that the OOR lacked authority to determine that the requested records were not entitled to be designated confidential security information because they took the form of an electronic communication. The OOR also erred in determining that the Commission was required to disclose the requested records under Section 335(d) of the Public Utility Code.

15

For these reasons, we reverse the OOR's final determination that the Commission must disclose the records sought by Requesters.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Energy Transfer, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 1700 C.D. 2019 |
| | : | |
| Rebecca Moss and Spotlight PA, | : | |
| Respondents | : | |
| | | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1722 C.D. 2019 |
| | : | |
| Rebecca Moss and Spotlight PA, | : | |
| Respondents | : | |

## ORDER

AND NOW this 20th day of January, 2023, the final determination of the Office of Open Records, dated November 8, 2019, is REVERSED insofar as it required disclosure of records requested by Rebecca Moss and Spotlight PA.

_____
MARY HANNAH LEAVITT, President Judge Emerita